United States Court of Appeals
Fifth Circuit

**F I L E D**

May 4, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 03-30201

_____

PAMELA L. PRESCOTT,

Plaintiff-Appellee,

versus

NORTHLAKE CHRISTIAN SCHOOL; ET AL,

Defendants,

NORTHLAKE CHRISTIAN SCHOOL,

Defendant-Appellant.

**Appeal from the United States District Court
for the Eastern District of Louisiana**

Before GARWOOD, JONES, and STEWART, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Northlake Christian School (NCS) attempted to forestall strife with its newly-hired principal Pamela Prescott by entering into an employment contract for "biblically-based mediation" or arbitration under the auspices of the Institute for Christian Conciliation, these methods being prescribed as the "sole remedy" for any controversy. When the school's relationship with Prescott deteriorated, however, Prescott filed suit. The district court ordered ADR. Mediation occurred, then arbitration; NCS appealed a

highly adverse and somewhat dubious award back to the court; NCS appealed to this court; and we are forced to remand for further proceedings. So much for saving money and relationships through alternative dispute resolution. Perfect justice is not always found in this world.

## I. BACKGROUND

NCS hired Prescott as its elementary/preschool principal for the 1999-2000 school year. In a written employment contract, the parties agreed "in conformity with the biblical injunctions of 1 Corinthians 6:1-8, Matthew 5:23,24, and Matthew 18:15-20 . . . that any claim or dispute arising out of, or related to, this agreement or to any aspect of the employment relationship" would be referred to "biblically-based mediation" and, if unsuccessful, binding arbitration. The agreement specified that "the arbitration process shall be conducted in accordance with the current Rules of Procedure for Christian Conciliation of the Institute for Christian Conciliation." Moreover, the parties waived "their respective rights to file a lawsuit against one another in any civil court for such disputes, except to enforce a legally binding arbitration decision."

In the spring of 2000, NCS told Prescott her contract would not be renewed for the following year and instructed her to vacate the premises of the school by March 31, 2000. She was placed on administrative leave for the duration of the school year

2

contract and was paid her full salary and benefits throughout the contract term.

In February 2001, Prescott filed suit against NCS, its board of directors, and its chief administrator in federal court. She asserted claims for Title VII gender discrimination, sexual harassment, and retaliation, violation of the Louisiana Whistle-blower Protection Act, LA. R.S. § 23:967 (2003), and breach of contract. NCS moved to compel arbitration. The court granted NCS's motion, stayed Prescott's suit, and administratively closed the case.[1]

To submit their dispute to arbitration, following the failure of mediation, the parties executed a form mediation/arbitration agreement furnished by the ICC. They agreed to be governed by ICC rules, which included conducting the arbitration pursuant to the Montana Uniform Arbitration Act ("MUAA"). Most important, the parties interlineated the agreement in two places. First, the agreement originally provided that all communications, written or oral, "between the parties during the mediation and/or arbitration process shall be inadmissible in a court of law or for legal discovery." The parties crossed out the "and/or arbitration" language, presumably making such communications admissible in a court of law. Second, on Prescott's

---

[1] On the eve of arbitration, Prescott voluntarily dismissed with prejudice all claims against the individual defendants. Thus, only NCS and Prescott remain parties to this litigation.

initiative, the parties added and initialed a hand-written provision, which stated: "No party waives appeal rights, if any, by signing this agreement."

After an unsuccessful attempt at mediation, the parties proceeded before a single ICC arbitrator. Over a six-day period, the arbitrator heard testimony from a multitude of witnesses and reviewed the evidence and affidavits submitted by the parties. On June 14, 2002, the arbitrator determined that NCS had failed to resolve its conflict with Prescott in accordance with Matthew 18, and other biblical scriptures, which he held were incorporated into the terms of Prescott's employment contract.[2] The arbitrator rendered judgment in favor of Prescott on her breach of contract claim and awarded her $157,856.52 for damage to her reputation and for future loss of income.[3] The arbitrator also awarded NCS $786.46 for past due COBRA payments. NCS filed a motion to reconsider with the ICC administrator.[4] The arbitrator denied the motion.

---

[2] Curiously, the arbitrator employed the biblical passages that were cited as prefatory principles in the contract in order to supersede the actual contract language, which gave Prescott no right to be employed beyond a one-year term. This result appears incompatible with Louisiana law. See Barbe v. A.A. Harmon & Co., 705 So. 2d 1210 (1998).

[3] The arbitrator rejected Prescott's Title VII claims, as well as her claim under the Louisiana Whistleblower Protection Act. Prescott did not appeal the rejection of these claims to the district court.

[4] NCS also filed other post-arbitration motions with the arbitrator. NCS filed an objection to ex parte communications, a motion for a new hearing, and a motion for disclosure contending that new evidence had been uncovered that demanded a hearing. The arbitrator summarily denied these motions on July 31, 2002.

NCS next moved to vacate the arbitration award in federal court, and argued, inter alia, that the handwritten amendments to the arbitration agreement expanded the federal court's scope of review. Under this expanded scope of review, NCS urged the district court to vacate the arbitration award, as a matter of law, because Prescott was not wrongfully terminated, and she was not entitled to damages. The district court disagreed and concluded that the "if any" language "merely preserves whatever appeal rights are statutorily granted under the MUAA." The district court rejected NCS's substantive claims under the MUAA's narrow scope of review. NCS now appeals that decision to this court.

## II.  STANDARD OF REVIEW

On a motion to vacate an arbitration award, we review the district court's findings of fact for clear error and questions of law de novo. Harris v. Parker College of Chiropractic, 286 F.3d 790, 791 (5th Cir. 2002). Normally, the district court's review of an arbitration award, under the Federal Arbitration Act ("FAA"), is "extraordinarily narrow." Antwine v. Prudential Bache Securities, Inc., 899 F.2d 410, 413 (5th Cir. 1990)(stating that, under the FAA, "courts should defer to the arbitrator's decision when possible")(citations omitted).[5] The scope of judicial review is

---

[5]      Under the FAA, a district court may vacate an award only if: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers. 9 U.S.C. § 10(a)(2001); Harris, 286 F.3d at 791. An arbitration award may also be vacated if in making the award the arbitrator acted with "manifest disregard for the law." Williams v. Cigna Fin.

equally narrow under the MUAA.[6]  The MUAA also permits modification of an arbitration award under limited circumstances.[7]

In the instant case, we are called upon to determine whether the parties' arbitration agreement expanded the scope of judicial review beyond that provided in the MUAA.  The district court's interpretation of a contract, including the initial determination whether the contract is ambiguous, is a conclusion of law.  American Totalisator Co., Inc. v. Fair Grounds Corp., 3 F.3d 810, 813 (5th Cir. 1993); Thrift v. Hubbard, 44 F.3d 348, 357 (5th Cir. 1995).  If the contract is ambiguous, then "the determination

_____

Advisors, Inc., 197 F.3d 752, 761 (5th Cir. 1999).

[6]     Under MUAA, a court may only vacate an arbitration award if:

(a) the award was procured by corruption, fraud, or other undue means; (b) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party; (c) the arbitrators exceeded their powers; (d) the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of 27-5-213, as to prejudice substantially the rights of a party; or (e) there was no arbitration agreement and the issue was not adversely determined in proceedings under 27-5-115 and the party did not participate in the arbitration hearing without raising the objection.

MONT. CODE. § 27-5-312(1)(2003).

[7]     An arbitration award may be modified or corrected, under the MUAA, only if:

(a) there was an evident miscalculation of figures or mistake in the description of any person, thing, or property referred to in the award; (b) the arbitrators awarded upon a matter not submitted to him and the award may be corrected without affecting the merits of the decision upon the issues submitted; or (c) the award is imperfect in a matter of form not affecting the merits of the controversy.

MONT. CODE § 27-5-313(1)(2003).

6

of the parties' intent through the extrinsic evidence is a question of fact." Watkins v. Petro-Search, Inc., 689 F.2d 537, 538 (5th Cir. 1982).

### III. DISCUSSION

NCS offers several arguments on appeal: (1) the arbitration agreement expanded the scope of judicial review; (2) the arbitrator erred, as a matter of law, in ruling that NCS breached its contract with Prescott and that Prescott was entitled to damages; and (3) the arbitrator violated several provisions of the MUAA.[8] Because we are uncertain whether, and if so, to what extent, the arbitration agreement expanded the scope of judicial review, we vacate the district court's judgment and remand for further proceedings.

In a broad sense, this dispute is subject to the FAA. See Volt Info. Sciences, Inc. v. Board of Trustees, 489 U.S. 478-79, 109 S. Ct. 1248, 1255-56 (1989)(finding that the FAA applies to "a written agreement to arbitrate in any contract involving interstate commerce"); 9 U.S.C. § 2 (2000). Thus, the FAA, and the body of federal substantive law interpreting it, would typically govern the resolution of this dispute. Moses H. Cone Memorial

---

[8] More specifically, NCS argued, in addition to the scope of review issue, that the arbitrator erred in: (1) finding that NCS breached its contract with Prescott; (2) awarding damages that were unauthorized under Louisiana law; (3) exceeding his contractually limited authority; and (4) engaging in misconduct by participating in ex parte communications with Prescott's counsel, neglecting material evidence, and refusing to disclose circumstances likely to affect impartiality. The district court found against NCS on all grounds, and NCS has appealed each assignment of error to this court.

<u>Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983)(recognizing that the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act").

The FAA, however, does not bar parties from structuring an arbitration by means of their contractual agreements, nor does it preempt all state laws regarding arbitration. <u>See</u> <u>Harris</u>, 286 F.3d at 793 (permitting contractual modification concerning standard of review); <u>Specialty Healthcare Mgmt., Inc. v. St. Mary's Parish Hosp.</u>, 220 F.3d 650, 654 (5th Cir. 2000)(recognizing that the FAA "does not preempt all state law related to arbitration agreements"). We held in <u>Gateway Technologies, Inc. v. MCI Telecommunications Corp.</u>, 64 F.3d 993, 996 (5th Cir. 1995), that "a contractual modification is acceptable because, as the Supreme Court has emphasized, arbitration is a creature of contract and the FAA's pro-arbitration policy does not operate without regard to the wishes of the contracting parties."

A threshold issue is which state's law governs the interpretation of the arbitration contract. Prescott's employment agreement provided that the arbitration "was subject to . . . the Montana Arbitration Act, Title 27, Montana Code Annotated." The district court viewed this as a choice-of-law provision concerning the standards for arbitration. NCS contends, correctly, that the reference to the MUAA is not a choice-of-law provision, and that Louisiana law controls the interpretation of the arbitration

8

agreement as an addendum to the employment contract. In <u>Valero</u>

<u>Refining, Inc. v. M/T Lauberhorn</u>, 813 F.2d 60, 64 n.5 (5th Cir.

1987), this circuit determined that contractual language

authorizing arbitration in New York City did not constitute a New

York choice-of-law provision. Instead, "the provision merely

requires that the <u>procedures</u> that the arbitrators use be in

accordance with the laws applicable to New York City." <u>Id</u>. at 65

(emphasis in original). Accordingly, the MUAA controls the

procedures attendant to the arbitration, but not the interpretation

of the underlying contract.

Louisiana law applies to this dispute between a Louisiana

resident and a Louisiana school concerning the proper

interpretation of a Louisiana contract.[9] The employment contract

contained a valid provision requiring all disputes to be

adjudicated under the laws of Louisiana. In Louisiana, "[w]here

parties stipulate the State law governing the contract, Louisiana

conflict of laws principles require that the stipulation be given

effect, unless there is statutory or jurisprudential law to the

contrary or strong public policy considerations justifying the

refusal to honor the contract as written." <u>Delhomme Industries,</u>

<u>Inc. v. Houston Beechcraft, Inc.</u>, 669 F.2d 1049, 1058 (5th Cir.

---

[9]   See <u>Coghlan v. Wellcraft Marine Corp.</u> 240 F.3d 449, 452 (5th Cir. 2001) (federal court must apply choice-of-law rules of state in which it sits); <u>Godchaux v. Conveying Techniques, Inc.</u>, 846 F.2d 306, (5th Cir. 1988) ("Louisiana provides that the law of the place of contracting determines the nature, validity, and construction of that contract.") (citations omitted).

1982)(quoting <u>Associated Press v. Toledo Invs., Inc.</u>, 389 So.2d 752, 754 (La. App. 1980)).  The parties' additional pre-arbitration agreement in no way detracts from that choice; alternatively, it is independently subject to Louisiana law.

The inquiry thus becomes whether the parties' arbitration agreement contemplated expanded judicial review.  Contrary to the district court's determination, this matter cannot be resolved on the face of the agreement and requires further factual development.  Under Louisiana law, "interpretation of a contract is the determination of the common intent of the parties."  LA. CIV. CODE ANN. ART. 2045 (2003).  However, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  LA. CIV. CODE ANN. ART. 2046 (2003).  Only if the contract is ambiguous may the court look beyond the four corners of the document.  <u>Taita Chemical Co., Ltd. v. Westlake Styrene Corp.</u>, 246 F.3d 377, 386 (5th Cir. 2001).

In a handwritten additional paragraph, NCS and Prescott agreed that "[n]o party waives appeal rights, if any, by signing this [arbitration] agreement."  The district court concluded that this language merely preserved whatever appeal rights the MUAA already granted to the parties.  This conclusion is far from self-evident.  In <u>Gateway</u>, the arbitration agreement provided that "[t]he arbitration decision shall be final and binding to both parties, except that errors of law shall be subject to appeal."  64

10

F.3d at 996. The court concluded that this language "expanded review of the arbitration award by the federal courts." Id. This court reached the same result in Harris, where the agreement provided that "[t]he Award of the Arbitrator shall be binding on the parties hereto, although each party shall retain his right to appeal any questions of law, and judgment may be entered thereon in any court having jurisdiction." 286 F.3d at 793. While the language in Harris and Gateway is more straightforward, it can certainly be argued that by adding this language to a form contract that otherwise contained no provision concerning appeal of an arbitration award, the parties here intended to expand the scope of judicial review. Such an interpretation heeds the principle that "[a] provision susceptible of different meanings must be interpreted with the meaning that renders it effective and not one that renders it ineffective." LA. CIV. CODE ART. 2049 (2003). The district court's interpretation would seem to render the handwritten modification surplusage, and therefore meaningless.[10]

_____

[10] Furthermore, the instant case is materially distinct from Action Indus., Inc. v. U.S. Fidelity & Guaranty Co., 358 F.3d 337 (5th Cir. 2004). There, the court determined "that the parties' intent to replace the FAA's vacatur standard [could] not be gleaned from the Agreement's general choice-of-law provision, which provide[d] that Tennessee law govern[ed] contractual execution and performance." Id. at 341. Thus, the arbitration clause did "not in any way modify or replace the FAA's rules." Id. However, in the instant case, the contractual modification is not premised on a general choice-of-law provision or a vague reference to a particular state's arbitration statute. Rather, the parties expressly adopted the ICC arbitration agreement and amended that agreement by inserting tailor-made appellate review language. Thus, the provision at issue is fundamentally different than the provision struck in Action Industries and more closely resembles the provisions approved of in Gateway and Harris. Last, as Action Industries recognizes, "we construe ambiguous contractual language against the party who drafted it." Id. (citing Ford v. NYLCare Health Plans of the Gulf Coast, Inc., 141 F.3d 243, 249 (5th Cir. 1998)).

11

Even if the parties intended to affect the scope of judicial review with this language, however, their precise intentions concerning expanded review are ambiguous. We reach this conclusion mindful that "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE ART. 2050. Thus, it is also significant that the parties decided to permit "a court of law" to review written and oral communications (i.e., the record evidence) from the arbitration; this modification of the contract's form language amplifies their apparent intent to expand the scope of judicial review. Reinforcing Prescott's apparent intention to preserve expanded appeal rights (it was her attorney who insisted upon these special conditions), Prescott had a court reporter transcribe the arbitration proceedings.

These contractual tidbits strongly suggest that the parties intended judicial review to be available beyond the normal narrow range of the FAA or MUAA. Because they cannot compel a firm decision on the face of the contract, however, we find it ambiguous and must remand for the district court to take evidence on and contractually interpret the circumstances surrounding the making of the provision. The court will then be required to re-evaluate

---

Therefore, we must construe the provision, and any ambiguities contained therein, against Prescott.

12

under the appropriate standard NCS's challenges to the arbitration award.

## IV.  CONCLUSION

For the reasons stated above, we **VACATE** the district court's order confirming the arbitration award and **REMAND** for further proceedings consistent with this opinion.

**VACATED and REMANDED.**

13

CARL E. STEWART, Circuit Judge, dissenting:

I respectfully dissent from the panel majority's conclusion that a clause that provides "No party waives appeal rights, if any, by signing this [arbitration] agreement," when considered on its face or when read in harmony with the other provisions of the parties' agreement, is ambiguous regarding the parties' intent to contract for a more expansive scope of review than that otherwise available pursuant to the FAA or the MUAA. The majority accurately sets forth the facts and procedural history of this case, so I will not repeat them here.

The majority concludes that this clause, which speaks only in terms of "appeal rights" and contemplates that none may exist, at least arguably evidences the parties' intent "to expand the scope of judicial review." The majority reaches this conclusion even though the clause neither identifies a question for our consideration that would not otherwise be reviewable under the FAA or MUAA nor refers to any particular level of scrutiny pursuant to which such review should be conducted. The majority further finds that certain "contractual tidbits . . . strongly suggest that the parties intended judicial review to be available beyond the normal narrow range of the FAA or MUAA." Finally, notwithstanding its uncertainty regarding whether and to what extent the parties' agreement expanded the scope of judicial review, the majority concludes that this ambiguity requires that we remand the case to the district court to adduce evidence of the parties' intentions

and "interpret the circumstances surrounding the making of this provision." Because I find the majority's determinations irreconcilable with the terms, context, and purpose of the parties' arbitration agreement and our recent clarification in Action Industries, Inc. v. United States Fidelity & Guaranty Co., 358 F.3d 337 (5th Cir. 2004), regarding the level of exactitude required to opt-out of the narrow scope of review available under the governing arbitration statute, I must disagree with all three conclusions.

The majority begins its analysis by rejecting the district court's determination that the reference to the Montana Uniform Arbitration Act contained in the parties' submission agreement constituted a "choice-of-law" provision governing the scope of judicial review of the arbitration award in the instant case. This provision provided that "THIS AGREEMENT IS SUBJECT TO ARBITRATION PURSUANT TO THE MONTANA ARBITRATION ACT, TITLE 27, MONTANA CODE ANNOTATED." The district court reasoned that the MUAA, like the FAA,
sets forth only limited grounds for vacatur or modification of an arbitration award, and that to "expand the scope of judicial review beyond that allowed by the law governing the arbitration process, the arbitration agreement must expressly and unambiguously evidence the parties' intent to do so." Finding no such express and unambiguous statement in the submission agreement's additional, handwritten provision that "No party waives appeal rights, if any, by signing this

15

[arbitration] agreement," the district court concluded that the clause simply retained the few grounds for disturbing an arbitration award available under the MUAA.

According to the majority, our opinion in Valero Refining, 813 F.2d at 64-65 & n. 5, compels the conclusion that the MUAA clause "controls the procedures attendant to the arbitration, but not the interpretation of the underlying contract." The latter question, the majority reasons, must be determined under Louisiana law, in accordance with the general choice-of-law provision contained in the parties' employment agreement. While I agree that we must resort to state rules of construction to resolve any conflict between purportedly competing contractual provisions, the majority's reliance on Valero Refining is misplaced, and injects ambiguity into an agreement which, when properly considered as a whole, has none. And, even if I were to agree that the parties' intention regarding the applicable scope of judicial review is ambiguous, our opinion in Action Industries, Inc., 358 F.3d at 341-42, establishing that a clause must be clear and unambiguous to expand the statutory scope of review, makes it patently apparent that the clause at issue here fails to overcome the governing arbitration statute and its attendant narrow grounds for vacatur. I will address each of these points in turn.

In Valero Refining, we rejected the assertion that a clause stipulating that the "laws of the City of New York" would govern

16

the arbitration proceeding[11] invoked the then-controlling law of the Second Circuit, of which New York is a part, that RICO claims were not subject to arbitration. Id. at 65. We reasoned that the agreement's reference to New York law was not a choice-of-law clause requiring application of the Second Circuit's rule regarding arbitrability, but rather "merely require[d] that the procedures that the *arbitrators use* be in accordance with the laws applicable to New York City." Id. (emphasis added). The clause at issue in Valero Refining, however, is not comparable to the specific reference to the MUAA in the submission agreement before us. In Ford v. NYLCare Health Plans of the Gulf Coast Inc., 141 F.3d 243 (5th Cir. 1998), relied upon by the district court, we held that a virtually identical reference to state law-in that case, to the Texas General Arbitration Act[12]—unambiguously governed nothing less than every aspect of the arbitration under the agreement at issue, rejecting the assertion that the clause could be read to make the "TGAA applicable only to the procedural aspects of arbitration." Id. at 249 (concluding that the reference to the TGAA unambiguously

_____

[11]The clause at issue provided: "Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York pursuant to the laws relating to arbitration there in force." Valero Refining, 813 F.2d at 64 n.5.

[12]The arbitration agreement stated that arbitration of any claim must be settled "in accordance with the Texas General Arbitration Act" and, as in this case, contained a notice providing: "THIS AGREEMENT IS SUBJECT TO ARBITRATION UNDER THE TEXAS GENERAL ARBITRATION ACT." Ford, 141 F.3d at 249.

17

expressed the parties' intent to supercede the FAA rules with Texas arbitration law).

It is clear under <u>Ford</u> that the MUAA clause sufficed to supercede the FAA's scope of review, and at least provisionally set forth the grounds for vacatur or modification of the arbitration award in the instant case. <u>See</u> <u>id</u>.; Action Industries, 358 F.3d at 342-43 (recognizing that an agreement's specific reference to a state arbitration statute would suffice to opt-out of the FAA standards for vacatur). The question thus becomes whether other language in the parties' agreement sufficed to overcome the MUAA clause. <u>See</u> <u>Ford</u>, 141 F.3d at 249. In this case the parties' rights and duties with respect to arbitration are set forth in two separate agreements: the employment contract, which contains an arbitration clause and incorporates the ICC's arbitration rules by reference, and a submission agreement, which supplements the parties' more general commitment to resolve their disputes through arbitration by defining the issues to be submitted to the arbitrator.

Like the MUAA clause, the clause at the core of this dispute, "No party waives appeal rights, if any, by signing this agreement," appears in the submission agreement. On its face, this "no waiver" clause indicates that the parties intended only to retain whatever appeal rights they had at the time they added that clause. The majority, rejecting this view as "not self-evident," finds that NCS's argument that such an interpretation renders the "no waiver" clause surplusage is sufficiently compelling to create an ambiguity in the parties' agreement. The majority is further persuaded by the

18

purported absence of any other "provision concerning an appeal of an award" in the parties' agreement. I disagree with both aspects of the majority's rationale and its ultimate conclusion that such an ambiguity exists.

First, the majority's reading---that the clause does not simply retain the MUAA standards---renders the language "if any" surplusage, and it is the very inclusion of the phrase "if any" that evidences the parties' express contemplation that the entire clause may be redundant. As the majority acknowledges, under Louisiana law, an interpretation of a contract that has the effect of rendering a provision superfluous or meaningless must be avoided. See LA. CIV. CODE ART. 2049. Thus, we cannot, as the majority has done, leave out terms of a contract or render them surplusage and then declare that there is an ambiguity, itself a result of refusing to give effect to the contract's express provisions.

Second, contrary to the majority's conclusion, the arbitration agreement at issue contains numerous provisions concerning "appeal rights," all of which reaffirm the parties' intent that any arbitration award would be final and binding and not subject to appeal "except as provided by law." In particular, the parties' employment agreement provided that the parties "waive their respective rights to file a lawsuit against one another in any civil courts for such disputes, *except to enforce a legally binding arbitration decision.*" (emphasis added). The employment agreement also incorporated by reference the ICC rules, which in turn provided that "[t]he arbitrator's decision is final" and "shall be legally binding on the parties, except as provided by law," and,

19

more specifically, "cannot be considered or appealed except as provided by Rule 41 (Request for Reconsideration [by the arbitrator]) and/or civil law." ICC Rules 40.E, G. Clause 2 of the submission agreement similarly provided that the arbitration would be "legally binding." In Clause 3, the submission agreement reiterated that the parties "agreed to 'abide by and perform any decision rendered by the arbitrator" and that the parties "realize that arbitration will be the exclusive remedy for this dispute and that [they] may not later litigate these matters in civil court." In short, these provisions establish the agreement's primary emphasis on the exclusivity and finality of arbitration as a means of resolving the instant dispute between the parties. All of these provisions support the conclusion that the parties' handwritten "no waiver" clause merely sought to preserve whatever narrow grounds for challenging an arbitration award that were available to them.

Nor do the aptly-labeled "contractual tidbits" cited by the majority compel the contrary conclusion that the parties' added language intended to expand the scope of judicial review. That the parties' agreement authorized "a court of law" to review written and oral communications might, as the majority concludes, support the notion that they contemplated an expanded review. However, it is also wholly consistent with an intent to allow consideration of the arbitration award only under the narrow grounds available under the FAA, or, in this case, the MUAA, which, for example, permit vacatur where an arbitrator's failure to consider relevant evidence has substantially prejudiced a party. See 9 U.S.C. § 10 (a) (3); MONT. CODE § 27-5-312 (1) (d). In the absence of record evidence, or

20

the authorization to review written and oral communications, the reviewing court would encounter great difficulty in assessing an alleged error by the arbitrator based on this ground.

Similarly, Prescott's insistence that the arbitral proceedings be transcribed do not persuade me to lean in favor of finding an intent to expand the scope of judicial review. The application of a narrow scope of review (limiting the grounds open for our consideration) or a deferential standard of review (setting forth how hard we must look at such grounds) does not obviate the need for a record. See, e.g., Prestige Ford v. Ford Dealer Computer Servs., Inc., 324 F.3d 391, 396 (5th Cir. 2003) (stating that, "[g]iven the limited record available to this court, absent further documentation in the record suggesting a willful inattentiveness to the governing law, it would be difficult to find that the arbitration panel acted with manifest disregard for an applicable legal principle without undermining our stated deference for the arbitration process"). In fact, the ICC Rules pursuant to which the parties' arbitration was conducted specifically allow such transcription, yet, as noted above, also expressly state that any resultant award `shall be legally binding on the parties` and `cannot be considered or appealed except as provided by Rule 41 (Request for Reconsideration [by the arbitrator]) and/or civil law.` ICC Rules 40.E, G. Admittedly, the grounds available for disturbing an arbitration award pursuant to the FAA or MUAA are narrow; however, when they apply they do not provide for no review at all.

Finally, even if I were to agree with the majority that the "no waiver" clause at issue is ambiguous regarding the parties' intent to expand judicial review, the very existence of ambiguity means that at best this clause may be deemed a failed attempt to alter the scope of review otherwise available under the MUAA. Our recent decision in Action Industries, 358 F.3d at 340-41, confirms

21

the district court's rationale that the contractual language required to opt-out of the governing statutory scope of review must be "clear and unambiguous." See id. at 341-42 (citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 59 (1995); Hughes Training Inc. v. Cook, 254 F.3d 588, 593 (5th Cir. 2001)). In Action Industries, we rejected the assertion that a general choice-of-law provision referencing Tennessee law, without reference to the Tennessee Uniform Arbitration Act, was insufficiently clear and unambiguous to evidence the parties' intent to opt-out of the FAA's grounds for vacatur of an arbitration award. Id. at 342. Notwithstanding the appellant's argument that this intent could be "gleaned" from this choice-of-law provision, we did not remand the matter to the district court to adduce further evidence regarding the parties' intent. Rather, once we determined that the parties' agreement did not specifically reference state arbitration law or specify, "with certain exactitude how the FAA [vacatur] rules [were] to be modified," we simply concluded that it failed as a matter of law to depart from the governing standard.

As examples of clauses that met the requisite level of exactitude, the Action Industries panel pointed to the clauses in Gateway, 64 F.3d at 996, and Harris, 286 F.3d at 793, noting that in each case we held that the language employed "evinced the parties' clear intent to depart from the FAA's vacatur standard." Action Industries, 358 F.3d at 342. Although the majority concedes that the "no waiver" clause at issue in this case is not "as straightforward" as the clauses we considered in Gateway and Harris, I cannot agree, in light of our opinion in Action Industries, that the lack of specificity in the "no waiver" clause can lead us to conclude anything other than it does not suffice to expand the scope of judicial review beyond the grounds available under the MUAA. Moreover, a close reading of Harris reveals that the opinion presciently recognized that to the extent a clause neither identifies with specificity a question for our consideration not otherwise available under the

22

governing statutory standard nor refers to any particular level of scrutiny pursuant to which such review should be conducted, that clause will not successfully expand the scope of review.

In Harris, we refined Gateway's holding by establishing that an agreement that merely reserves the "right to appeal any questions of law," does not necessarily mean that de novo review applies to all issues on appeal. See Harris, 286 F.3d 793-94. At issue in Harris was the intended meaning of the phrase "questions of law." Id. The Harris panel found that the phrase was equally susceptible to two reasonable and conflicting interpretations, noting that it "could reasonably be interpreted to encompass solely 'pure' questions of law, [as the appellee argued,] or it could be read broadly, to encompass mixed questions of law and fact," as urged by the drafter-appellants. Id. at 793-94. Consequently, the Harris panel concluded that the reference to "questions of law" was ambiguous, and construed the phrase against the drafter-appellants.[13] Id. at 794. Significantly, the panel concluded that this not only dictated that de novo review apply only to pure questions of law, but that, "with respect to questions of fact and mixed questions of law and fact, *we apply the default standard of review, vacating only for manifest disregard of the law, or on the grounds listed in the FAA*." Id. (emphasis added).

We also found that the canon of contract construction requiring courts to "give effect to all contract provisions so that none will be rendered meaningless" compelled our narrow interpretation of the clause. Id. We noted in Harris that because the arbitrator's legal conclusions "were intimately

---

[13]Unlike Harris, however, in the instant case the parties' employment contract provided that "This contract shall be interpreted under . . . Louisiana [law] *as if jointly authored by the parties*," rendering it inappropriate to construe the added "no waiver" language against the drafter of that clause. (emphasis added). Of course, we only resort to this principle of contractual interpretation where the contested language is ambiguous and, as I have discussed above, I do not agree that any such ambiguity surrounds the "no waiver" clause at issue in this case.

bound up with the facts," none of his findings would be final if we were to review de novo all mixed questions of fact and law. Id. Thus, we reasoned, a broad reading of "questions of law" to encompass mixed questions would render meaningless "the provision that the arbitrator's award should be binding." Id. Accordingly, we concluded that "questions of law" had to be construed as referring to only "pure" legal questions in order to give effect to this finality provision. We further pointed out that parties seeking "more extensive review of an arbitrator's award may do so by specifying the standard of review in the arbitration agreement." Id. (citing Hughes Training, 254 F.3d at 593 (enforcing a provision that stated that "in actions seeking to vacate an [arbitration] award, the standard of review to be applied to the arbitrator's findings of fact and conclusions of law will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury"). The Harris panel noted that unlike in Hughes, "[i]n the present case, the arbitration agreement simply did not specify that the standard of review for anything other than pure questions of law had been altered." Id.

In light of our circuit precedent as clarified in Harris and Action Industries, I cannot agree with the majority's view that a clause which, by the majority's own admission is at best ambiguous regarding the parties' intent to expand judicial review, requires remanding the matter for further inquiry into the circumstances surrounding its drafting. In Harris and Action Industries, we did not remand the matter for the district court to take evidence on the parties' intent; rather, we established that the applicable statutory standard would govern to the extent of the deficiency in specificity. See Harris, 286 F.3d at 794; Action Industries, 358 F.3d at 342. Because I find that by its terms, purpose, and context, the "no waiver" clause does not unambiguously expand the scope of judicial review and that a contrary interpretation would render other provisions pertaining to the finality of

24

the award meaningless, I would affirm the district court's confirmation of the arbitration award. As the majority concedes, a remand would eviscerate whatever vestiges of efficient dispute resolution still exist in this case, an eventuality that is wholly inconsistent with the parties' undisputed intent to resolve their claims exclusively through arbitration. The parties have already asserted their respective conflicting interpretations to the district court and this court, and I am unpersuaded that they will shed any greater light on their respective positions should they find themselves before the district court for a reprise. I further note that it is inevitable that one side in an arbitration would be dissatisfied with the result. Absent clear and unambiguous contractual language to the contrary, however, I find that the scope of our review is limited to consideration of the narrow grounds for vacatur or modification of the award that exist at law. For these reasons, I respectfully dissent.