United States Court of Appeals
Fifth Circuit

**F I L E D**

January 23, 2004

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 02-60765

_____

ACTION INDUSTRIES, INC.,

Plaintiff,

versus

UNITED STATES FIDELITY & GUARANTY COMPANY,

Defendant.

_____

ACTION INDUSTRIES, INC.,

Plaintiff-Appellee,

versus

ENGINEERED HANDLING SYSTEMS, INC.,

Defendant-Appellant.

_____

Appeals from the United States District Court
For the Northern District of Mississippi

_____

Before WIENER, CLEMENT, and PRADO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

1

Engineered Handling Systems, Inc. ("EHS") appeals the district court's confirmation of an arbitration award.[1] EHS contends that the district court: (1) abused its discretion by denying EHS's motion to transfer; (2) reviewed the arbitration award under an improper vacatur standard; and (3) erroneously confirmed an award that exceeded the arbitration panel's scope of power. We affirm the judgment of the district court on each assignment of error.

## I. FACTS AND PROCEEDINGS

On May 7, 1998, Action Industries, Inc. ("Action") and EHS entered a contract ("the Agreement") which provided that EHS would design, build and install a conveyor system for Action's furniture manufacturing and distribution facility in Lee County, Mississippi.[2] The Agreement specified that the conveyor would "accommodate the production rate of 11 units per minute." The finished conveyor ultimately failed to meet this production rate,[3] and Action incurred substantial labor and maintenance costs as a result.

Pursuant to the terms of the Agreement,[4] Action filed a demand for arbitration with the American Arbitration Association on October 2, 2000. Action asserted that EHS was liable for negligent design and for breaches o f express and implied warranties.[5] EHS counterclaimed for

---

[1] United States Fidelity & Guaranty Company, an original party to the arbitration and subsequent litigation, is not a party on appeal.

[2] Action is incorporated in Virginia and has its principal place of business in Lee County, Mississippi. EHS is incorporated in Tennessee and has its principal place of business in Memphis, Tennessee.

[3] The conveyor only achieved 47% of the rate specified in the Agreement.

[4] The Agreement stated: "Any controversy or claim arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the Rules, then obtaining, of the American Arbitration Association . . . ."

[5] Action sought either: (1) the cost of a properly-designed conveyor ($5,539,886.00), or (2) the purchase price of the improperly-designed conveyor ($1,307,333.03) plus the

payment on past invoices.  On December 10, 2001, the arbitration panel awarded Action

$1,181,303.03.[6]

On December 27, 2001, Action filed a lawsuit in Mississippi state court to confirm the

arbitration award.  Thirteen days later, EHS sued Action in Tennessee state court to vacate the

arbitration award.  Both lawsuits were subsequently removed to federal court.[7]

On April 18, 2002, the Mississippi district court denied EHS's motion to transfer

Action's lawsuit to Tennessee.  On June 12, 2002, the Tennessee district court dismissed EHS's

lawsuit on the grounds of comity.  On August 14, 2002, the Mississippi district court confirmed

the arbitration award under the standard of review set forth in the Federal Arbitration Act

("FAA").  EHS appeals the Mississippi district court's denial of the motion to transfer, its review

of the award under the FAA's vacatur standard, and its conclusion that the arbitration award was

within the panel's scope of power.

## II.  STANDARD OF REVIEW

We review a district court's findings of fact for clear error and its conclusions of law *de

novo.  Switzer v. Wal-Mart Stores, Inc.*, 52 F.3d 1294, 1298 (5th Cir. 1995).  A district court's

refusal to transfer a case is reviewed for abuse of discretion.  *Save Power Ltd. v. Syntek Fin.

Corp*, 121 F.3d 947, 949 n.3 (5th Cir. 1997).  We review a district court's confirmation of an

---

excessive maintenance costs ($191,501.62) and additional labor costs ($2,974,864.00) that Action incurred while maintaining and operating the EHS conveyor ($4,473,698.65).

[6] $1,181,303.90 = (Award on Action's claim: $1,307,333.03) - (Award on EHS's counterclaim: $137,203.29) + (AAA administrative fees: $11,174.16).

[7] Action's lawsuit was removed to the district court for the Northern District of Mississippi, and EHS's lawsuit was removed to the district court for the Western District of Tennessee.

arbitration award *de novo*. *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994).

### III. DISCUSSION

**A.    Motion to Transfer**

EHS first appeals the district court's denial of its motion to transfer Action's confirmation lawsuit to the district court for the Western District of Tennessee. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2003). The determination of "convenience" turns on a number of public and private interest factors,[8] none of which can be said to be of dispositive weight. *Syndicate 420 at Lloyd's London v. Early Am. Ins., Co.*, 796 F.2d 821, 827 (5th Cir. 1986).

EHS contends that the Western District of Tennessee is a more convenient venue than the Northern District of Mississippi because "the application of Tennessee law is integral to this case." This argument is without merit. First, EHS fails to establish that the Mississippi district court was either unable or unwilling to apply Tennessee law. Second, the Mississippi district court appears to have been the most convenient venue for the parties and potential witnesses. Action's principal place of business is in Mississippi, the Agreement was executed in

---

[8] These private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 831 (5th Cir. 1986). The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Id.*

Mississippi, and the contested arbitration was held in Mississippi. We therefore find that the district court did not abuse its discretion by denying EHS's motion to transfer.

**B.     Vacatur Standard**

EHS next appeals the district court's application of the FAA vacatur standard. It contends that the arbitration award should be reviewed under the broader vacatur standard outlined in the Tennessee Uniform Arbitration Act ("TUAA").[9]

Arbitration under the FAA "is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Sanford Junior Univ.*, 489 U.S. 468, 477 (1989). "Just as parties may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted." *Id.* Accordingly, this Court has consistently held that parties may modify the FAA's standard of arbitration review. *Harris v. Parker Coll. of Chiropractic*, 286 F.3d 790, 793 (5th Cir. 2002); *see also Hughes Training Inc. v. Cook*, 254 F.3d 588, 593 (5th Cir. 2001) ("An arbitration agreement may therefore expand judicial review of an arbitration award beyond the scope of the Federal Arbitration Act.").[10]

---

[9] The FAA and TUAA contain similar grounds for vacating arbitration awards, but they are not necessarily coextensive. For instance, this Court employs the "manifest disregard of the law" as a non-statutory standard for vacating arbitration awards under the FAA. *Prestige Ford v. Ford Dealer Computer Servs.*, 324 F.3d 391, 397 (5th Cir. 2003). Tennessee courts, however, have not adopted such a narrow non-statutory standard of vacatur under the TUAA. *Warbington Constr., Inc. v. Landmark, L.L.C.*, 66 S.W.3d 853, 857 (Tenn. Ct. App. 2001).

[10] In *Atlantic Aviation v. EBM Group*, 11 F.3d 1276, 1280 (5th Cir. 1994), this Court held that "the FAA governs judicial review of arbitration proceedings notwithstanding any choice-of-law provision or state law to the contrary." This holding was implicitly overruled by the Supreme Court in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995). *See Harris v. Parker Coll. of Chiropractic*, 286 F.3d 790, 793 (5th Cir. 2002); *Hughes Training Inc. v. Cook*, 254 F.3d 588, 593 (5th Cir. 2001); *Gateway*

5

FAA rules apply absent clear and unambiguous contractual language to the contrary. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59 (1995); *Hughes Training,* 254 F.3d at 593. In general, this Court permits arbitration under non-FAA rules if a contract expressly references state arbitration law, or if its arbitration clause specifies with certain exactitude how the FAA rules are to be modified. For example, in *Gateway Technologies, Inc. v. MCI Telecommunications Corp.,* 64 F.3d 993, 996 (5th Cir. 1995), we held that a clause stating that "[t]he arbitration decision shall be final and binding on both parties, *except that errors of law shall be subject to appeal*" evinced the parties' clear intent to depart from the FAA's vacatur standard (emphasis added). In *Harris*, 286 F.3d at 793, we found that a contract providing that "[t]he award of the Arbitrator shall be binding on the parties hereto, *although each party shall retain his right to appeal any questions of law*" demonstrated a similar intent to modify the FAA standard (emphasis added). In *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.,* 141 F.3d 243, 247 (5th Cir. 1998), we held that a contract which specifically referenced the "Texas General Arbitration Act" unambiguously expressed the parties' intent to supercede the FAA rules with Texas arbitration law.

In this case, the Agreement fails to expressly reference the TUAA,[11] and its arbitration clause does not in any way modify or replace the FAA's rules.[12] EHS nonetheless contends that

---

*Technologies, Inc. v. MCI Telecommunications Corp.*, 64 F.3d 993, 996-97 (5th Cir. 1995).

[11] Moreover, we construe ambiguous contractual language against the party who drafted it. *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 141 F.3d 243, 249 (5th Cir. 1998). EHS was the principal drafter of the Agreement, yet failed to insert a specific reference to the TUAA in the Agreement.

[12] *See supra* note 4.

the parties' intent to replace the FAA's vacatur standard can be gleaned from the Agreement's general choice-of-law provision, which provides that Tennessee law governs contractual execution and performance.[13] We disagree.

In *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62 (1995), the Supreme Court held that a contract's choice-of-law provision did not evince the parties' clear intent to opt out of the FAA default rules. *Mastrobuono* involved a dispute between a securities broker and two of its customers. *Id.* at 54. The parties agreed to resolve any disputes by arbitration, but stipulated that "the entire agreement" would be governed by New York law.[14] In holding that New York law did not govern the arbitration, the Court reasoned that the choice-of-law provision should be read, at most, to "include only New York's substantive rights and obligations, and not the state's allocation of power between alternative tribunals." *Id.* at 60.[15]

---

[13] The Agreement's choice-of-law clause provides that "[t]he law of the State of Tennessee shall govern the execution and performance of this agreement when accepted as herein provided."

[14] The contract included: (1) a general choice-of-law provision stating that the contract was "governed by the laws of the State of New York;" and (2) an arbitration clause stating that "'any controversy' arising out of the transactions between the parties 'shall be settled by arbitration' in accordance with the rules of the National Association of Securities Dealers (NASD), or the Boards of Directors of the New York Stock Exchange and/or the American Stock Exchange." *Mastrobuono*, 514 U.S. at 58-59.

[15] *Mastrobuono* does not conflict with the Supreme Court's earlier holding in *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989). In *Volt*, the contract at issue contained both an arbitration clause and a choice-of-law clause. *Id.* at 470. The California courts had held that the contract sufficiently expressed the parties' intent to incorporate California arbitration rules into their agreement. *Id.* Thus, the Court's analysis in *Volt* presupposed that the contract had expressed the parties' clear intent to depart from the FAA's rules. *Id.* at 474 (stating that "the interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review."). The holding of *Volt* is simply that parties may modify the rules of arbitration with clear contractual language. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 n.9 (2002) ("*Volt* and *Mastrobuono* both direct courts to respect the terms of the agreement

7

In the wake of *Mastrobuono*, this Court has held that a choice-of-law provision is insufficient, by itself, to demonstrate the parties' clear intent to depart from the FAA's default rules. *See Ford*, 141 F.3d at 249 (holding that a contract's choice-of-law provision did not determine the scope of an arbitration clause).[16] Our sister circuits have reached the same result. In a case directly on point, the Third Circuit held that "an arbitration clause and a generic choice-of-law clause . . . [do not] demonstrate a clear intent to displace the FAA's vacatur standards and replace them with ones borrowed from [state] law." *Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 293 (3d Cir. 2001). The court opined that "we need to establish a default rule, and the one we adopt is that a generic choice-of-law clause, standing alone, is insufficient to support a finding that contracting parties intended to opt out of the FAA's default standards." *Id.* Similarly, the Ninth Circuit recently held that "a general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules

without regard to the federal policy favoring arbitration.").

[16] *Contra ASW Allstate Painting & Constr. Co., Inc. v. Lexington Ins. Co.*, 188 F.3d 307 (5th Cir. 1999) (per curiam). In *Allstate*, the contract at issue contained a general choice-of-law provision and an arbitration clause. *Id.* at 310. The Court in *Allstate* held that "[b]ecause the construction agreement contains a Texas choice-of-law provision, and Texas arbitration rules do not undermine the federal policy of the FAA, we conclude that the [Texas General Arbitration Act] applies to this arbitration agreement." *Id.* *Allstate*, however, failed to mention, let alone distinguish, the Supreme Court's holding in *Mastrobuono*. It instead relied solely on the Supreme Court's earlier holding in *Volt*. S*ee also Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 296 n.4 (3d Cir. 2001) (opining that *Allstate* is not persuasive because it failed to address *Mastrobuono*). *Allstate* also failed to sufficiently distinguish *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 141 F.3d 243, 249 (5th Cir. 1998), in which we held that a choice-of-law provision did *not* determine the scope of an arbitration clause. Because *Allstate* directly conflicts with *Ford*, and because *Ford* preceded *Allstate*, we are bound by *Ford*. *See United States v. Walker*, 302 F.3d 322, 325 (5th Cir. 2002) (noting that "the earlier precedent controls").

for arbitration.*" Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002); *see also*

*UHC Mgmt. Co., Inc. v. Computer Sciences Corp.*, 148 F.3d 992, 997 (8th Cir. 1998) (same);

*Ferro Corp. v. Garrison Indus., Inc.,* 142 F.3d 926, 937 (6th Cir. 1998) (same); *Porter Hayden*

*Co. v. Century Indem. Co.*, 136 F.3d 380, 382-83 (4th Cir. 1998) (same); *Nat'l Union Fire Ins.*

*Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 134-35 (2d Cir. 1996) (same); *Painewebber Inc. v.*

*Elahi*, 87 F.3d 589, 593-94 (1st Cir. 1996) (same).

Thus, we hold that the Agreement's choice-of-law provision does not express the parties'

clear intent to depart from the FAA's vacatur standard. Because the Agreement does not

expressly reference the TUAA, and its arbitration clause does not modify or replace the FAA's

rules, we affirm the district court's application of the FAA's vacatur standard.

## C. The Arbitration Panel's Scope of Power

EHS also appeals the district court's confirmation of the arbitration panel's award of

consequential damages. It contends that this portion of the award should be vacated because it

exceeded the panel's scope of power.

Section 10 of the FAA allows vacatur, *inter alia*, "[w]here the arbitrators exceeded their

power." 9 U.S.C. § 10(a)(4). Limitations on the arbitrators' scope of power must be clear and

unambiguous or else they will be construed narrowly. *See Mastrobuono v. Shearson Lehman*

*Hutton*, 514 U.S. 52, 62 (1995). A reviewing court examining whether arbitrators exceeded their

powers "must resolve all doubts in favor of arbitration." *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668,

672 (5th Cir. 2002).

EHS argues that the Agreement's warranty provision prohibited the arbitrators from

awarding consequential damages. We disagree. The warranty provision merely provided that

9

"[i]n no event shall [EHS] be liable for any compensatory or consequential damage in connection with the installation, use or failure of the equipment." The consequential damages award did not derive from the installation, use or failure of the conveyor, but rather from its *defective design*.[17] The warranty clause is notably silent whether such damages are prohibited.

At most, the warranty provision creates an ambiguity as to whether the panel may award consequential damages for design defects. We construe "ambiguous contract language against the party who drafted it." *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 141 F.3d 243, 249 (5th Cir. 1998). EHS was the principal drafter of the Agreement. If EHS had actually intended to prohibit *all* consequential damages, it should have simply drafted a blanket prohibition of such damages. Instead, EHS drafted a warranty provision which prohibited only certain types of consequential damages.

We find that the warranty provision did not in any way limit the arbitration panel's power to award consequential damages for design defects. Thus, the district court did not err by confirming the arbitration award for consequential damages.

### IV. CONCLUSION

For the stated reasons, the district court's denial of EHS's motion to transfer, application of the FAA vacatur standard, and confirmation of the arbitration award of consequential damages are AFFIRMED.[18]

---

[17] As a threshold matter, the district court did not clearly err by finding that the arbitration award was attributed to "design defects" rather than "the installation, use or failure of the equipment." We agree with the district court that the conveyor's failure to accommodate the required production rate can be attributed to its faulty design.

[18] The parties filed six motions during the pendency of this appeal which are disposed of as follows: Action's motion to strike Issues IV and V of EHS's brief as moot is

GRANTED; Action's motion to strike the alleged misrepresentation in EHS's reply brief is DENIED; EHS's motion to strike all improper and inappropriate filings which are not contained in the record is DENIED; EHS's motion for attorney's fees and costs associated in defending against Action's motion to strike is DENIED; and both parties' motions for sanctions are DENIED.