CARL E. STEWART, Circuit Judge,
dissenting:
I respectfully dissent from the panel majority’s conclusion that a clause that provides “No party waives appeal rights, if any, by signing this [arbitration] agreement,” when considered on its face or when read in harmony with the other provisions of the parties’ agreement, is ambiguous regarding the parties’ intent to contract for a more expansive scope of review than that otherwise available pursuant to the FAA or the MUAA. The majority accurately sets forth the facts and procedural history of this case, so I will not repeat them here.
The majority concludes that this clause, which speaks only in terms of “appeal rights” and contemplates that none may exist, at least arguably evidences the parties’ intent “to expand the scope of judicial review.” The majority reaches this conclusion even though the clause neither identifies a question for our consideration that would not otherwise be reviewable under the FAA or MUAA nor refers to any particular level of scrutiny pursuant to which such review should be conducted. The majority further finds that certain “contractual tidbits ... strongly suggest that the parties intended judicial review to be available beyond the normal narrow range of the FAA or MUAA.” Finally, notwithstanding its uncertainty regarding whether and to what extent the parties’ agreement expanded the scope of judicial review, the majority concludes that this ambiguity requires that we remand the case to the district court to adduce evidence of the parties’ intentions and “interpret the circumstances surrounding the making of this provision.” Because I find the majority’s determinations irreconcilable with the terms, context, and purpose of the parties’ arbitration agreement and our recent clarification in Action Industries, Inc. v. United States Fidelity & Guaranty Co., 358 F.3d 337 (5th Cir.2004), regarding the level of exactitude required to opt-out of the narrow scope of review available under the governing arbitration statute, I must disagree with all three conclusions.
*499 The majority begins its analysis by rejecting the district court’s determination that the reference to the Montana Uniform Arbitration Act contained in the parties’ submission agreement constituted a “choice-of-law” provision governing the scope of judicial review of the arbitration award in the instant case. This provision provided that “THIS AGREEMENT IS SUBJECT TO ARBITRATION PURSUANT TO THE MONTANA ARBITRATION ACT, TITLE 27, MONTANA CODE ANNOTATED.” The district court reasoned that the MUAA, like the FAA, sets forth only limited grounds for vacatur or modification of an arbitration award, and that to “expand the scope of judicial review beyond that allowed by the law governing the arbitration process, the arbitration agreement must expressly and unambiguously evidence the parties’ intent to do so.” Finding no such express and unambiguous statement in the submission agreement’s additional, handwritten provision that “No party waives appeal rights, if any, by signing this [arbitration] agreement,” the district court concluded that the clause simply retained the few grounds for disturbing an arbitration award available under the MUAA.
According to the majority, our opinion in Valero Refining, 813 F.2d at 64-65 & n. 5, compels the conclusion that the MUAA clause “controls the procedures attendant to the arbitration, but not the interpretation of the underlying contract.” The latter question, the majority reasons, must be determined under Louisiana law, in accordance with the general choice-of-law provision contained in the parties’ employment agreement. While I agree that we must resort to state rules of construction to resolve any conflict between purportedly competing contractual provisions, the majority’s reliance on Valero Refining is misplaced, and injects ambiguity into an agreement which, when properly considered as a whole, has none. And, even if I were to agree that the parties’ intention regarding the applicable scope of judicial review is ambiguous, our opinion in Action Industries, Inc., 358 F.3d at 341-42, establishing that a clause must be clear and unambiguous to expand the statutory scope of review, makes it patently apparent that the clause at issue here fails to overcome the governing arbitration statute and its attendant narrow grounds for vaca-tur. I will address each of these points in turn.
In Valero Refining, we rejected the assertion that a clause stipulating that the “laws of the City of New York” would govern the arbitration proceeding[1] invoked the then-controlling law of the Second Circuit, of which New York is a part, that RICO claims were not subject to arbitration. Id. at 65. We reasoned that the agreement’s reference to New York law was not a choice-of-law clause requiring application of the Second Circuit’s rule regarding arbitrability, but rather “merely require[d] that the procedures that the arbitrators use be in accordance with the laws applicable to New York City.” Id. (emphasis added). The clause at issue in Valero Refining, however, is not comparable to the specific reference to the MUAA in the submission agreement before us. In Ford v. NYLCare Health Plans of the Gulf Coast Inc., 141 F.3d 243 (5th Cir.1998), relied upon by the district court, we held that a virtually identical reference to state law — in that case, to the Texas General Arbitration Act[2] — unambiguously *500 governed nothing less than every aspect of the arbitration under the agreement at issue, rejecting the assertion that the clause could be read to make the “TGAA applicable only to the procedural aspects of arbitration.” Id. at 249 (concluding that the reference to the TGAA unambiguously expressed the parties’ intent to supercede the FAA rules with Texas arbitration law).
It is clear under Ford that the MUAA clause sufficed to supercede the FAA’s scope of review, and at least provisionally set forth the grounds for vacatur or modification of the arbitration award in the instant case. See id.; Action Industries, 358 F.3d at 342-43 (recognizing that an agreement’s specific reference to a state arbitration statute would suffice to opt-out of the FAA standards for vacatur). The question thus becomes whether other language in the parties’ agreement sufficed to overcome the MUAA clause. See Ford, 141 F.3d at 249. In this case the parties’ rights and duties with respect to arbitration are set forth in two separate agreements: the employment contract, which contains an arbitration clause and incorporates the ICC’s arbitration rules by reference, and a submission agreement, which supplements the parties’ more general commitment to resolve their disputes through arbitration by defining the issues to be submitted to the arbitrator.
Like the MUAA clause, the clause at the core of this dispute, “No party waives appeal rights, if any, by signing this agreement,” appears in the submission agreement. On its face, this “no waiver” clause indicates that the parties intended only to retain whatever appeal rights they had at the time they added that clause. The majority, rejecting this view as “not self-evident,” finds that NCS’s argument that such an interpretation renders the “no waiver” clause surplusage is sufficiently compelling to create an ambiguity in the parties’ agreement. The majority is further persuaded by the purported absence of any other “provision concerning an appeal of an award” in the parties’ agreement. I disagree with both aspects of the majority’s rationale and its ultimate conclusion that such an ambiguity exists.
First, the majority’s reading — that the clause does not simply retain the MUAA standards' — renders the language “if any” surplusage, and it is the very inclusion of the phrase “if any” that evidences the parties’ express contemplation that the entire clause may be redundant. As the majority acknowledges, under Louisiana law, an interpretation of a contract that has the effect of rendering a provision superfluous or meaningless must be avoided. See La. Civ.Code Art. 2049. Thus, we cannot, as the majority has done, leave out terms of a contract or render them surplusage and then declare that there is an ambiguity, itself a result of refusing to give effect to the contract’s express provisions.
Second, contrary to the majority’s conclusion, the arbitration agreement at issue contains numerous provisions concerning “appeal rights,” all of which reaffirm the parties’ intent that any arbitration award would be final and binding and not subject to appeal “except as provided by law.” In particular, the parties’ employment agreement provided that the parties “waive their respective rights to file a lawsuit against one another in any civil courts for such disputes, except to enforce a legally binding arbitration decision." (emphasis added). The employment agreement also incorporated by reference the ICC rules, which in turn provided that “[t]he arbitra *501 tor’s decision is final” and “shall be legally binding on the parties, except as provided by law,” and, more specifically, “cannot be considered or appealed except as provided by Rule 41 (Request for Reconsideration [by the arbitrator]) and/or civil law.” ICC Rules 40.E, G. Clause 2 of the submission agreement similarly provided that the arbitration would be “legally binding.” In Clause 3, the submission agreement reiterated that the parties “agreed to ‘abide by and perform any decision rendered by the arbitrator’” and that the parties “realize that arbitration will be the exclusive remedy for this dispute and that [they] may not later litigate these matters in civil court.” In short, these provisions establish the agreement’s primary emphasis on the exclusivity and finality of arbitration as a means of resolving the instant dispute between the parties. All of these provisions support the conclusion that the parties’ handwritten “no waiver” clause merely sought to preserve whatever narrow grounds for challenging an arbitration award that were available to them.
Nor do the aptly-labeled “contractual tidbits” cited by the majority compel the contrary conclusion that the parties’ added language intended to expand the scope of judicial review. That the parties’ agreement authorized “a court of law” to review written and oral communications might, as the majority concludes, support the notion that they contemplated an expanded review. However, it is also wholly consistent with an intent to allow consideration of the arbitration award only under the narrow grounds available under the FAA, or, in this case, the MUAA, which, for example, permit vacatur where an arbitrator’s failure to consider relevant evidence has substantially prejudiced a party. See 9 U.S.C. § 10(a)(3); Mont.Code § 27-5-312(l)(d). In the absence of record evidence, or the authorization to review written and oral communications, the reviewing court would encounter great difficulty in assessing an alleged error by the arbitrator based on this ground.
Similarly, Prescott’s insistence that the arbitral proceedings be transcribed do not persuade me to lean in favor of finding an intent to expand the scope of judicial review. The application of a narrow scope of review (limiting the grounds open for our consideration) or a deferential standard of review (setting forth how hard we must look at such grounds) does not obviate the need for a record. See, e.g., Prestige Ford v. Ford Dealer Computer Servs., Inc., 324 F.3d 391, 396 (5th Cir.2003) (stating that, “[g]iven the limited record available to this court, absent further documentation in the record suggesting a willful inattentiveness to the governing law, it would be difficult to find that the arbitration panel acted with manifest disregard for an applicable legal principle without undermining our stated deference for the arbitration process”). In fact, the ICC Rules pursuant to which the parties’ arbitration was conducted specifically allow such transcription, yet, as noted above, also expressly state that any resultant award “shall be legally binding on the parties” and “cannot be considered or appealed except as provided by Rule 41 (Request for Reconsideration [by the arbitrator]) and/or civil law.” ICC Rules 40.E, G. Admittedly, the grounds available for disturbing an arbitration award pursuant to the FAA or MUAA are narrow; however, when they apply they do not provide for no review at all.
Finally, even if I were to agree with the majority that the “no waiver” clause at issue is ambiguous regarding the parties’ intent to expand judicial review, the very existence of ambiguity means that at best this clause may be deemed a failed attempt to alter the scope of review otherwise available under the MUAA. Our recent decision in Action Industries, 358 F.3d at *502 340-41, confirms the district court’s rationale that the contractual language required to opt-out of the governing statutory scope of review must be “clear and unambiguous.” See id. at 841-42 (citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 59, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); Hughes Training Inc. v. Cook, 254 F.3d 588, 593 (5th Cir.2001)). In Action Industries, we rejected the assertion that a general choice-of-law provision referencing Tennessee law, without reference to the Tennessee Uniform Arbitration Act, was insufficiently clear and unambiguous to evidence the parties’ intent to opt-out of the FAA’s grounds for vacatur of an arbitration award. Id. at 342. Notwithstanding the appellant’s argument that this intent could be “gleaned” from this choice-of-law provision, we did not remand the matter to the district court to adduce further evidence regarding the parties’ intent. Rather, once we determined that the parties’ agreement did not specifically reference state arbitration law or specify, “with certain exactitude how the FAA [vacatur] rules [were] to be modified,” we simply concluded that it failed as a matter of law to depart from the governing standard.
As examples of clauses that met the requisite level of exactitude, the Action Industries panel pointed to the clauses in Gateway, 64 F.3d at 996, and Harris, 286 F.3d at 793, noting that in each case we held that the language employed “evinced the parties’ clear intent to depart from the FAA’s vacatur standard.” Action Industries, 358 F.3d at 342. Although the majority concedes that the “no waiver” clause at issue in this case is not “as straightforward” as the clauses we considered in Gateway and Harris, I cannot agree, in light of our opinion in Action Industries, that the lack of specificity in the “no waiver” clause can lead us to conclude anything other than it does not suffice to expand the scope of judicial review beyond the grounds available under the MUAA. Moreover, a close reading of Harris reveals that the opinion presciently recognized that to the extent a clause neither identifies with specificity a question for our consideration not otherwise available under the governing statutory standard nor refers to any particular level of scrutiny pursuant to which such review should be conducted, that clause will not successfully expand the scope of review.
In Harris, we refined Gateway’s, holding by establishing that an agreement that merely reserves the “right to appeal any questions of law,” does not necessarily mean that de novo review applies to all issues on appeal. See Harris, 286 F.3d at 793-94. At issue in Harris was the intended meaning of the phrase “questions of law.” Id. The Harris panel found that the phrase was equally susceptible to two reasonable and conflicting interpretations, noting that it “could reasonably be interpreted to encompass solely ‘pure’ questions of law, [as the appellee argued,] or it could be read broadly, to encompass mixed questions of law and fact,” as urged by the drafter-appellants. Id. at 793-94. Consequently, the Harris panel concluded that the reference to “questions of law” was ambiguous, and construed the phrase against the drafter-appellants.[3] Id. at 794. Significantly, the panel concluded that this *503 not only dictated that de novo review apply only to pure questions of law, but that, “with respect to questions of fact and mixed questions of law and fact, we apply the default standard of review, vacating only for manifest disregard of the law, or on the grounds listed in the FAA.” Id. (emphasis added).
We also found that the canon of contract construction requiring courts to “give effect to all contract provisions so that none will be rendered meaningless” compelled our narrow interpretation of the clause. Id. We noted in Harris that because the arbitrator’s legal conclusions “were intimately bound up with the facts,” none of his findings would be final if we were to review de novo all mixed questions of fact and law. Id. Thus, we reasoned, a broad reading of “questions of law” to encompass mixed questions would render meaningless “the provision that the arbitrator’s award should be binding.” Id. Accordingly, we concluded that “questions of law” had to be construed as referring to only “pure” legal questions in order to give effect to this finality provision. We further pointed out that parties seeking “more extensive review of an arbitrator’s award may do so by specifying the standard of review in the arbitration agreement.” Id. (citing Hughes Training, 254 F.3d at 593 (enforcing a provision that stated that “in actions seeking to vacate an [arbitration] award, the standard of review to be applied to the arbitrator’s findings of fact and conclusions of law will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury”)). The Harris panel noted that unlike in Hughes, “[i]n the present case, the arbitration agreement simply did not specify that the standard of review for anything other than pure questions of law had been altered.” Id.
In light of our circuit precedent as clarified in Harris and Action Industries, I cannot agree with the majority’s view that a clause which, by the majority’s own admission is at best ambiguous regarding the parties’ intent to expand judicial review, requires remanding the matter for further inquiry into the circumstances surrounding its drafting. In Harris and Action Industries, we did not remand the matter for the district court to take evidence on the parties’ intent; rather, we established that the applicable statutory standard would govern to the extent of the deficiency in specificity. See Harris, 286 F.3d at 794; Action Industries, 358 F.3d at 342. Because I find that by its terms, purpose, and context, the “no waiver” clause does not unambiguously expand the scope of judicial review and that a contrary interpretation would render other provisions pertaining to the finality of the award meaningless, I would affirm the district court’s confirmation of the arbitration award. As the majority concedes, a remand would eviscerate whatever vestiges of efficient dispute resolution still exist in this case, an eventuality that is wholly inconsistent with the parties’ undisputed intent to resolve their claims exclusively through arbitration. The parties have already asserted their respective conflicting interpretations to the district court and this court, and I am unpersuaded that they will shed any greater light on their respective positions should they find themselves before the district court for a reprise. I further note that it is inevitable that one side in an arbitration would be dissatisfied with the result. Absent clear and unambiguous contractual language to the contrary, however, I find that the scope of our review is limited to consideration of the narrow grounds for vacatur or modification of the award that exist at law. For these reasons, I respectfully dissent.

. The clause at issue provided: "Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York pursuant to the laws relating to arbitration there in force.” Valero Refining, 813 F.2d at 64 n. 5.

. The arbitration agreement stated that arbitration of any claim must be settled “in accor *500 dance with the Texas General Arbitration Act” and, as in this case, contained a notice providing: "THIS AGREEMENT IS SUBJECT TO ARBITRATION UNDER THE TEXAS GENERAL ARBITRATION ACT.” Ford, 141 F.3d at 249.

. Unlike Harris, however, in the instant case the parties' employment contract provided that "This contract shall be interpreted under ... Louisiana [law] as if jointly authored, by the parties,” rendering it inappropriate to construe the added "no waiver” language against the drafter of that clause, (emphasis added). Of course, we' only resort to this principle of contractual interpretation where the contested language is ambiguous and, as I have discussed above, I do not agree that any such ambiguity surrounds the "no waiver” clause at issue in this case.