Sean C. **COOPER**, Plaintiff–Appellant

v.

**WESTEND CAPITAL MANAGEMENT, L.L.C.; George Bolton Holdings, L.L.C.; George Bolton; Gustave Ozag; George Elliman, Defendants–Appellees.**

No. 15-31068

United States Court of Appeals, Fifth Circuit.

Filed August 9, 2016

Tarak Anada, Esq., Jones Walker, L.L.P., Kearney Soniat Loughlin, Loughlin & Loughlin, New Orleans, LA, for Plaintiff–Appellant.

Cary S. Lapidus, Law Offices of Cary S. Lapidus, San Francisco, CA, Daniel John Carr, Joseph C. Peiffer, Peiffer Rosca Wolf Abdullah Carr & Kane, New Orleans, LA, for Defendants–Appellees.

Before STEWART, Chief Judge, and PRADO and SOUTHWICK, Circuit Judges.

CARL E. STEWART, Chief Judge:

Plaintiff-Appellant Sean Cooper challenges the district court's orders refusing to enjoin arbitration and confirming an award in favor of WestEnd Capital Management, L.L.C. ("WestEnd"), George Bolton Holdings, L.L.C. ("Bolton"), and Robert Ozag (together, the "WestEnd Parties"). We AFFIRM.

## I.

On September 15, 2009, Bolton, Ozag, and Cooper entered into the "First

Amended and Restated Operating Agreement" (the "Operating Agreement") for WestEnd as its members and managers. The Operating Agreement allows for the expulsion of a manager from WestEnd upon the unanimous consent of the other managers if the expulsion is for cause. Further, the Operating Agreement requires the parties to submit all disputes to binding arbitration.

On August 3, 2012, George Bolton informed Cooper that Ozag and Bolton had voted to expel him from WestEnd for, *inter alia*, misappropriating WestEnd's assets, breaching various fiduciary duties, and instructing WestEnd employees to impede an SEC investigation. Bolton also informed Cooper that he was banned from WestEnd's business premises under penalty of arrest. WestEnd then sought and was granted a temporary restraining order against Cooper in Louisiana state court (the "TRO suit"), alleging that Cooper had engaged in harassing behavior after his expulsion from WestEnd. On September 27, WestEnd commenced arbitration and requested an arbitration hearing in San Francisco. The next month, WestEnd voluntarily dismissed the TRO suit. Though Cooper objected to arbitration in San Francisco, JAMS ultimately appointed a retired California state court judge, Judge William Cahill (the "Arbitrator"), to serve as arbitrator.

Cooper filed this lawsuit in Louisiana federal district court, seeking to enjoin arbitration. In support of his injunction request, Cooper argued that the WestEnd Parties' arbitration claims were barred by res judicata and waiver because WestEnd filed the TRO suit against Cooper. The district court refused to enjoin the arbitration proceedings, concluding that the WestEnd Parties had not waived their right to arbitration and that res judicata did not apply (the "Injunction Order").

Over the course of arbitration, Cooper discovered a relationship between George Bolton and John Bates, a JAMS arbitrator who was not involved in the WestEnd arbitration proceedings. After discovering this relationship, Cooper requested that JAMS make additional disclosures regarding whether any JAMS mediators or arbitrators had social or business connections to any of the WestEnd Parties. In response, JAMS explained that it had already made all necessary disclosures. Ultimately, the Arbitrator ruled against Cooper and in favor of the WestEnd Parties. In the final arbitration award, the Arbitrator found Cooper liable to Bolton for $346,247.28, to Ozag for $940,140.57, and to WestEnd for $130,166.64, and also awarded attorney's fees, interest, and costs.

The parties then returned to the district court, where the WestEnd Parties moved to confirm the arbitration award. Cooper opposed this motion and argued that the award should be vacated because JAMS failed to make necessary disclosures and because the Arbitrator exceeded his powers in making awards to Ozag and Bolton. The district court confirmed the award in favor of the WestEnd Parties. Cooper now appeals the district court's orders refusing to enjoin arbitration and confirming the award.

## II.

■ Cooper first challenges the order refusing to enjoin arbitration, arguing that because of the TRO suit, the WestEnd Parties' claims were barred by res judicata and the WestEnd Parties waived their right to arbitration. We review the district court's order denying the injunction for abuse of discretion, but the underlying legal issues are reviewed de novo. *See Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*, 476 F.3d 326, 329 (5th Cir. 2007).

### A.

■ The WestEnd Parties contend that we lack jurisdiction to review the Injunction Order because Cooper failed to file a timely appeal. Before turning to the merits of Cooper's argument, "we are obligated to satisfy ourselves that appellate jurisdiction is proper." *Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 453 (5th Cir. 1998).

■ The WestEnd Parties assert that the Injunction Order was immediately appealable. It was not. "Section 16 of the Federal Arbitration Act ("FAA") . . . governs appellate review of arbitration orders." *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 309 (5th Cir. 2003). "The provisions relevant to this dispute vest the courts of appeals with jurisdiction over 'final decision[s] with respect to an arbitration,' while specifically denying appellate jurisdiction over nonfinal orders staying proceedings pending arbitration." *Id.* (alteration in original) (internal citations omitted). Accordingly, the question here is whether the Injunction Order constituted a final decision.

■ "A final decision is one that 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *Id.* (quoting *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 86, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)). While "a dismissal is a final decision" under this definition, "[a]n arbitration order entering a stay" is not. *Id.* Here, the district court explicitly denied the WestEnd Parties' motion "to the extent it seeks complete dismissal, rather than a stay" and ordered the action **"STAYED** pending completion of the pending JAMS arbitration and/or further order of the Court." Because the district court stayed the proceedings instead of dismissing them, the Injunction Order was not an appealable final decision. *See id.*

Our decision in *American Heritage Life Insurance Co. v. Orr*, 294 F.3d 702 (5th Cir. 2002), on which the WestEnd Parties rely, is not to the contrary. There, we explained that "where a district court with nothing before it but whether to compel arbitration and stay state court proceedings issues an order compelling arbitration, staying the underlying state court proceedings, and closing the case, thereby effectively ending the entire matter on its merits and leaving nothing more for the district court to do but execute the judgment, appellate jurisdiction lies, as the decision is 'final' within the contemplation of § 16(a)(3) of the FAA." *Id.* at 707. The WestEnd Parties argue that here, as in *Orr*, the district court referred all matters to arbitration and had nothing more to do but "execute the judgment" after the completion of arbitration. But, in *Orr*, the district court closed the case instead of entering a stay, a critical distinction for purposes of § 16(a)(3). *See id.*

■ Further, in *Apache Bohai*, we rejected the very argument that the WestEnd Parties now make. There, the plaintiff "contend[ed] that when a district court enters an order staying an action and referring all disputed matters to arbitration, leaving no live issues before the district court, this court should consider the order to be, in effect, a *de facto* dismissal and thus a final decision appealable under § 16(a)(3)." 330 F.3d at 309. We concluded that such a stay is not immediately appealable because "a stay, by definition, constitutes a postponement of proceedings, not a termination, and thus lacks finality." *Id.* Though a stay may occasionally "dispose[ ] of most or all issues, that fact alone does not render it the functional equivalent of a dismissal." *Id.*

■ Because the district court entered a stay, the Injunction Order was not a final decision under § 16(a)(3). We thus have jurisdiction to review it.

### B.

 We turn first to Cooper's assertion that the WestEnd Parties waived their right to arbitration by filing the TRO suit. "The right to arbitrate a dispute, like all contract rights, is subject to waiver." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009). "[A] party waives its right to arbitrate if it (1) substantially invokes the judicial process and (2) thereby causes detriment or prejudice to the other party." *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014) (internal citations and quotation marks omitted). "[I]n light of the federal policy favoring arbitration, '[t]here is a strong presumption against finding a waiver of arbitration.'" *Id.* at 421–22 (second alteration in original) (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004)).

 "To invoke the judicial process, a party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) (citation and internal quotation marks omitted). The WestEnd Parties' conduct does not meet this rigorous standard. In the TRO suit, WestEnd sought injunctive relief, arguing that Cooper's post-expulsion conduct posed a physical threat to WestEnd's properties and employees. In arbitration, the WestEnd Parties invoked claims related to the basis of Cooper's expulsion, including breach of contract, breach of fiduciary duty, conversion, and fraud. Because the TRO suit did not involve the same claims pursued in arbitration, the WestEnd Parties neither sought

"a decision on the merits before attempting to arbitrate," *id.* nor attempted to "litigate[ ] a specific claim it subsequently [sought] to arbitrate," *Republic Ins. Co.*, 383 F.3d at 344.

Cooper's reliance on our decision in *Miller Brewing Co. v. Fort Worth Distributing Co., Inc.*, is misplaced. There, Fort Worth Distributing Company, Inc. ("FWDC"), sought to compel arbitration against Miller Brewing Company ("Miller") based on an arbitration provision in a distributorship agreement; we concluded that FWDC had waived its arbitration rights. 781 F.2d 494, 496–97 (5th Cir. 1986). But there, FWDC sued in state court on the very claims it wished to arbitrate; its state court complaint did not even reference the agreement's arbitration clause; and FWDC took no action to actually proceed to arbitration for over three years. *Id.* at 497. Over those three years, "FWDC was busily pursuing its legal remedies," filing numerous lawsuits in state and federal court. *Id.* We concluded that such conduct "demonstrated a clear and unmistakable 'disinclination' to arbitrate." *Id.* The WestEnd Parties have not engaged in similar conduct, and further, they did not seek to obtain judicial relief on the same claim they sought to arbitrate.

Because the WestEnd Parties did not substantially invoke the judicial process, they have not waived arbitration.

### C.

Cooper contends that the district court erred in refusing to enjoin arbitration because the WestEnd Parties' claims were barred by res judicata.[1]

---

1. Some courts have concluded that res judicata is generally an issue for the arbitrator rather than the court and is thus not a basis to enjoin arbitration. *See Grigsby & Assocs., Inc. v. M Secs. Inv.*, 664 F.3d 1350, 1352–53 (11th Cir. 2011); *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 581 (7th Cir. 2006). Because res judicata does not apply to bar arbitration here, we need not decide that issue today.

We "review[ ] the res judicata effect of a prior state court judgment de novo." *E.E.O.C. v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 693 (5th Cir. 2007). "In determining the preclusive effect of an earlier state court judgment, federal courts apply the preclusion law of the state that rendered the judgment." *Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 906 (5th Cir. 2011). Here, because the underlying judgment is from a Louisiana state court, Louisiana res judicata principles apply. The Louisiana state court's dismissal with prejudice of WestEnd's TRO suit bars a subsequent suit if "(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation." *Chauvin v. Exxon Mobil Corp.*, 158 So.3d 761, 765 (La. 2014). "Louisiana's doctrine of res judicata can only be invoked if all essential elements are present and established beyond all question." *Lafreniere Park Found. v. Broussard*, 221 F.3d 804, 809 (5th Cir. 2000).

In determining whether an action is barred by Louisiana's res judicata doctrine, "the chief inquiry is whether the second action asserts a cause of action which arises out of the same transaction or occurrence that was the subject matter of the first action." *Chauvin*, 158 So.3d at 765. In making this inquiry, courts consider "the subject matter of the litigation, principal demand, or action" and whether "the logically-related events ... are so connected together [so as] to be referred by a single legal name such as a crime, a contract, or a wrong." *In re Succession of Bernat*, 123 So.3d 1277, 1284 (La. Ct. App. 3 Cir. 2013). We have held that the same transaction element is met if both actions "concern a group of facts so connected as to constitute a single wrong and so logically related that judicial economy and fairness mandate that all issues be tried in one suit." *Lafreniere Park Found.*, 221 F.3d at 811.

Cooper asserts that the TRO suit "arose out of or was related to the Operating Agreement and WestEnd's expulsion of Cooper." But, the TRO suit was related to Cooper's behavior *after* his expulsion from WestEnd, including "attempt[ing] to change locks" at the office, "engag[ing] in a pattern of threats and harassment," and "threaten[ing] the safety of" WestEnd's employees. True enough, the TRO suit referenced Cooper's expulsion from WestEnd and the allegations that made up the basis for that expulsion; but this information was alleged as background. In the TRO suit, WestEnd did not seek relief based on Cooper's pre-expulsion conduct; nor was that conduct "the subject matter of the litigation." *See Bernat*, 123 So.3d at 1284. Further, in this context, Cooper's pre-expulsion and post-expulsion conduct are not "so connected as to constitute a single wrong," *Lafreniere Park Found.*, 221 F.3d at 811, because Cooper's alleged post-expulsion harassment had no bearing on and was unrelated to the tort and contract claims WestEnd asserted in arbitration.

Because the TRO suit and the arbitration claims do not arise from the same transaction, res judicata does not apply. The district court did not err in refusing to enjoin arbitration on this basis.

### III.

Cooper next challenges the district court's order confirming the arbitration award. The FAA reflects a national policy favoring arbitration. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008). "In light of the strong federal policy favoring arbitration, judicial review of an arbitration award is extraordinarily

narrow." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 471–72 (5th Cir. 2012) (quoting *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002)); *see also Hall St. Assocs., L.L.C.*, 552 U.S. at 588, 128 S.Ct. 1396 (noting that the FAA provides "just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway"). Though the district court's confirmation of an award is reviewed de novo, "the review of the underlying award is exceedingly deferential." *Rain CII Carbon, LLC*, 674 F.3d at 472 (citation and internal quotation marks omitted).

 Under the FAA, the court "must" confirm an award unless the award is vacated under Section 10 or modified or corrected under Section 11. *Hall St. Assocs., L.L.C.*, 552 U.S. at 582, 128 S.Ct. 1396. Section 10 provides the exclusive grounds for vacatur of an arbitration award. *Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009). An award may be vacated: (1) "where the award was procured by corruption, fraud, or undue means"; (2) "where there was evident partiality or corruption in the arbitrators"; (3) "where the arbitrators were guilty of misconduct ... or of any other misbehavior by which the rights of any party have been prejudiced"; or (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

 The burden of proof is on the party seeking to vacate the award, and any doubts or uncertainties must be resolved in favor of upholding it. *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 385 & n.9 (5th Cir. 2004).

### A.

 As an initial matter, Cooper contends that California arbitration law, rather than the FAA, governs vacatur. In support of this argument, Cooper points to the Governing Law provision of the Operating Agreement, which provides that "[t]his Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of California." This choice-of-law provision, Cooper contends, requires the arbitration clause to be enforced under California law. Not so.

 As we have previously explained, "FAA rules apply absent clear and unambiguous contractual language to the contrary." *BNSF Ry. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 790 (5th Cir. 2015) (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 341 (5th Cir. 2004)). "[T]his Court permits arbitration under non-FAA rules if a contract *expressly references* state arbitration law...." *Id.* (citation omitted). "[A] choice-of-law provision is insufficient, by itself, to demonstrate the parties' clear intent to depart from the FAA's default rules." *Action Indus.*, 358 F.3d at 342. The Operating Agreement here does not expressly reference California arbitration law but instead contains only a choice-of-law provision. This is insufficient to compel the application of California's arbitration standards. *See BNSF Ry. Co.*, 777 F.3d at 790; *Action Indus.*, 358 F.3d at 342–43. We thus apply the vacatur standards of the FAA.[2]

---

**2.** Cooper also argues that the FAA does not apply because the agreement regarding WestEnd's operations does not involve interstate commerce. We reject this assertion because, *inter alia*, investment advisers are regulated under federal law. *See* 15 U.S.C. § 80b-1–21; *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) ("We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.").

### B.

■ Cooper contends that the award should be vacated because JAMS and the Arbitrator failed to make certain disclosures. Under the FAA, courts may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators." *Citigroup Global Mkts., Inc.*, 562 F.3d at 352 (quoting 9 U.S.C. § 10(a)(2)). Evident partiality is "a stern standard." *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 281 (5th Cir. 2007) (en banc). "The statutory language … seems to require upholding arbitral awards unless bias was clearly evident in the decisionmakers." *Id.* Thus, for the arbitration award to be vacated, Cooper "must produce specific facts from which a reasonable person would have to conclude that the arbitrator was partial to" the WestEnd Parties. *See Householder Grp. v. Caughran*, 354 Fed.Appx. 848, 852 (5th Cir. 2009) (citation and internal quotation marks omitted). The "alleged partiality [must be] direct, definite, and capable of demonstration rather than remote, uncertain, or speculative." *Id.* (citation omitted).

■ Cooper points to no specific facts that lead to the conclusion that the Arbitrator was biased in the WestEnd Parties' favor. Instead, Cooper argues that JAMS was required to make disclosures about Bates even though he was not assigned to the case. Here, the Arbitrator explicitly stated that he and Bates had never discussed this arbitration and that Bates did not know the Arbitrator was even at this hearing. In fact, there is no evidence that Bates had any relationship with the Arbitrator other than the fact that both serve as JAMS arbitrators. Most importantly, Cooper points to nothing in the record that would indicate that the Arbitrator had any prejudice against him. At best, Cooper's general allegations of partiality are "remote, uncertain, or speculative," *see Householder Grp.*, 354 Fed.Appx. at 852,

and thus fail to show "clearly evident" bias, *Positive Software Sols.*, 476 F.3d at 281.

### C.

■ Cooper's final argument is that the Arbitrator exceeded his powers in making the award. Section 10(a)(4) of the FAA "authorizes a federal court to set aside an arbitral award 'where the arbitrator[ ] exceeded [his] powers.'" *Oxford Health Plans LLC v. Sutter*, —— U.S. ——, 133 S.Ct. 2064, 2068, 186 L.Ed.2d 113 (2013). "We will sustain an arbitration award as long as the arbitrator's decision 'draws its essence' from the contract—even if we disagree with the arbitrator's interpretation of the contract." *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802 (5th Cir. 2013). "The question is whether the arbitrator's award was so unfounded in reason and fact, so unconnected with the wording and purpose of the [contract] as to manifest an infidelity to the obligation of an arbitrator." *Id.* (citation and internal quotation marks omitted). "[A]n arbitrator has not exceeded his powers unless he has utterly contorted the evident purpose and intent of the parties—the 'essence' of the contract." *Id.* at 802–03. The party challenging an arbitrator's award under § 10(a)(4) "bears a heavy burden." *Oxford Health Plans LLC*, 133 S.Ct. at 2068.

■ Cooper first suggests that JAMS violated its own rules (specifically, JAMS Rule 6) by appointing the Arbitrator without first resolving Cooper's objection to arbitration being held in San Francisco. Cooper cites no particular provision, but he is apparently referring to either JAMS Rule 6(a) or 6(b). Rule 6(a) states that "JAMS may convene, or the Parties may request, administrative conferences to discuss any procedural matter relating to the administration of the Arbitration." Rule

6(b) provides that "[i]f no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement, JAMS *may* determine the location of the Hearing, subject to Arbitrator review." Neither provision supports Cooper's argument that JAMS was *required* to resolve the venue dispute prior to appointing an arbitrator.

Cooper next argues that the Arbitrator's award to Ozag requires vacatur because the claim was based solely on a 2007 agreement that was not subject to arbitration, i.e., the claim was not arbitrable. We first consider if the Arbitrator "properly determined the initial question of arbitrability, i.e., whether the claim is within the parties' agreement to arbitrate." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 674–75 (5th Cir. 2012). "Preliminary issues in arbitration cases include gateway disputes, which typically require judicial determination, and procedural questions, which are to be reviewed by the arbitrator." *Robinson v. J & K Admin. Mgmt. Servs., Inc.*, 817 F.3d 193, 195 (5th Cir. 2016). Though "the arbitrability of disputes ... is generally a gateway issue to be determined by the courts," it is instead "deferred to arbitration where the agreement espouses the parties' intent to do so." *Id.*

Here, Cooper and the WestEnd Parties expressly adopted the JAMS Rules in the Operating Agreement. The JAMS Rules provide, in relevant part, that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." "[T]he express adoption of these rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc.*, 687 F.3d at 675 (concluding that express adoption of AAA arbitration rules showed parties' intent to arbitrate arbitrability). The Arbitrator did not exceed his powers in making this award.

Finally, Cooper asserts that Bolton's claim was time-barred as a matter of law. Procedural questions, such as whether a claim is barred by a statute of limitations, are generally "to be reviewed by the arbitrator." *Robinson*, 817 F.3d at 195; *see also Dell Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 873–74 (4th Cir. 2016) ("Procedural questions ... may include such issues as the application of statutes of limitations, notice requirements, laches, and estoppel."); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1109 (11th Cir. 2004) (stating that, absent a contrary agreement, arbitrators may "resolve disputes over whether a claim may be successfully litigated anywhere at all (due to concerns such as statute of limitations, laches, justiciability, etc.), or has any substantive merit whatsoever").

An arbitration award "may not be set aside for a mere mistake of fact or law." *Rain CII Carbon, LLC*, 674 F.3d at 472 (citation and quotation marks omitted). Even assuming the Arbitrator erred in applying the statute of limitations (which is certainly not clear from the record), that "mere mistake" would not justify vacatur. *See id.*; *see also Oxford Health Plans LLC*, 133 S.Ct. at 2068 ("It is not enough ... to show that the [arbitrator] committed an error—or even a serious error." (omission and alteration in original) (citation and internal quotation marks omitted)). "The risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law ... is a risk that every party to arbitration as-

sumes." *Kyocera Corp. v. Prudential–Bache Trade Servs., Inc.*, 341 F.3d 987, 1003 (9th Cir. 2003). Such legal errors "lie far outside the category of conduct embraced by § 10(a)(4)." *Id.*

### IV.

The judgment of the district court is AFFIRMED.