**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 00-11317
Summary Calendar

HUGHES TRAINING INC.; HUGHES ELECTRONIC CORPORATION;
RAYTHEON COMPANY,

Plaintiffs-Appellees,

VERSUS

GRACIE COOK; LITTLETON COOK,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division

June 29, 2001

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Appellants Gracie and Littleton Cook appeal from the district court's final judgment that vacated an arbitration award against Gracie Cook's former employer, Raytheon Company.[1] The Cooks argue that the district court applied an incorrect standard of review to the arbitrator's decision and that, even if the court applied the correct standard of review, the facts support the arbitrator's award of damages for intentional infliction of emotional distress.

---

[1]The district court asserted diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). This Court has jurisdiction over an appeal from a district court's final judgment pursuant to 28 U.S.C. § 1291.

1

I. Facts

Hughes Training hired Gracie Cook as a senior engineering assistant in 1993.[2] When she accepted the job, she signed a "Mutual Agreement to Arbitrate Claims." The agreement stated that all employment disputes would be submitted to final and binding arbitration. The agreement contained the following provision:

> Arbitration under [the] Agreement may be compelled and enforced according to the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and shall be conducted in accordance with the EPRP [(Employee Problem Resolution Procedures)] Arbitration Procedure.

The Employment Problem Resolution Procedures contained the following terms relating to an appeal from an arbitration award:

> Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement, to enforce an arbitration award, and to vacate an arbitration award. However, in actions seeking to vacate an award, the standard of review to be applied to the arbitrator's findings of fact and conclusions of law will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

By signing the document, Cook acknowledged that she had read both the arbitration agreement and the Employment Problem Resolution Procedures.

After Cook obtained a degree in management information systems, Raytheon transferred her to the Database Engineering Department under the supervision of Mike Braudaway. Employees in Braudaway's department created "geocells," which are visual

---

[2] Hughes Training merged with Raytheon in 1998.

databases that reflect topography in different areas of the world for use in flight simulators. The department worked under stringent budgetary and time demands for which Braudaway was responsible.

According to Braudaway, Cook struggled to comply with the budgetary and time constraints from the beginning. She required two additional weeks of training compared to the other employees in the department. Braudaway teamed Cook with another employee, Carmen Bernal, in an effort to improve the efficiency and quality of her work. Braudaway believed that Cook's work improved somewhat but that she was still "inconsistent" and error-prone.[3] According to Cook, Braudaway accused her of "building cow patties."

After a meeting in May of 1996, Braudaway informed Cook in writing that she would have until May 31, 1996, to improve her data base development skills. At that time, Raytheon would evaluate her work, and, if her skills did not improve, Raytheon would take further corrective action, which could include termination. In response, Cook accused Braudaway of discrimination. Braudaway in turn told her not to "play the race card." Braudaway never

reported the discrimination claim to Raytheon's Human Resources Department for an investigation.

---

[3] During her employment, Cook felt that she was not treated the same as other employees. She complained that the department had a "good old boy" network from which she and Bernal were excluded.

3

Braudaway gave Cook a "test bed" evaluation to complete within a specified period of time without the help of coworkers. Within a few days of receiving the test, Cook met with Braudaway and Melanie Dively, the manager of the Human Resources Department. Cook became very distraught and stressed during the meeting. She began to cry, stutter, and rub her arm. Braudaway offered to call Cook's doctor, but she refused.

Cook took medical leave within days of the meeting. She complained to her physician that she had difficulty processing her speech and sustaining her short-term memory. The physician concluded that she suffered from several mini-strokes that were propagated by her stress at work. Raytheon learned that Cook suffered a stroke in 1988 and that, on the date of the meeting, she exhibited stroke-like symptoms.

Upon Cook's insistence, the physician permitted her to return to work on August 5, 1996, ten days before his initial authorization date. The physician provided a written note indicating that she could return to work without any restrictions. Cook, however, explained to Braudaway that the doctor released her for the limited purpose of assessing the duties she was capable of performing. Braudaway immediately directed her to resume the test cell evaluation she began three months earlier. She had eight days remaining in the evaluation period to complete the project. Upon hearing that she must complete the project satisfactorily or else be fired, she began to cry and stutter as she had done three months

4

earlier. Braudaway told her either to contact Human Resources about a transfer or to call her doctor. Cook voluntarily left Raytheon a few days later.

In April of 1998, Cook filed a complaint in Texas state court alleging intentional infliction of emotional distress in connection with the end of her employment. She also added a Title VII discrimination claim in 1999. Her husband, Littleton Cook, filed a claim for loss of consortium. Raytheon argued that arbitration should be compelled pursuant to the employment agreement, and the trial court agreed.

After conducting a two-day hearing, the arbitrator awarded Gracie Cook $200,000 in damages for intentional infliction of emotional distress and Littleton Cook $25,000 in damages for loss of consortium. The arbitrator based her opinion primarily on the fact that Raytheon knew Cook previously suffered a stroke and that Cook exhibited symptoms of a stroke at the May 1996 meeting. The arbitrator concluded that Raytheon's reassignment of Cook to the "test bed" evaluation was intentional, caused her "stress," that her stress was "extreme," and that Raytheon's conduct was "extreme and outrageous." The arbitrator determined that Cook's discrimination claim was meritless.

Raytheon filed suit to vacate the arbitration award. Raytheon argued that the parties agreed to the judicial standard of review in the arbitration agreement and that the evidence did not support a finding that Raytheon intentionally inflicted emotional distress.

The Cooks argued that the standard of review incorporated in the arbitration agreement was inconsistent with the agreement itself and unconscionable in light of the parties' respective bargaining positions.   Alternatively, the Cooks argued that the evidence supported the claim for intentional infliction of emotional distress.

The district court issued an order vacating the arbitration award.   The court concluded that the parties lawfully contracted for the more expansive standard of review.   The court determined that Raytheon's decision to immediately continue Cook's time-sensitive evaluation was not extreme and outrageous conduct. Accordingly, the district court held that Gracie Cook failed to establish her claim for intentional infliction of emotional distress and that Littleton Cook was therefore not entitled to damages for loss of consortium as a matter of law.   The Cooks timely filed a notice of appeal.

## II. Standard of Review

A district court's decision refusing to vacate an arbitration award is reviewed under the same standard as any other district court decision. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947-49 (1995).   We accept findings of fact that are not clearly erroneous and decide questions of law *de novo*. *See General Motors Corp. v. Pamela Equities Corp.*, 146 F.3d 242, 246 (5th Cir.

6

1998).  No different standard applies when we review a district court's judgment vacating an arbitration award.  *See Gianelli Money Purchase Plan and Trust v. ADM Investor Serv., Inc.*, 146 F.3d 1309, 1310 (11th Cir. 1998).

A district court's review of an arbitration award is usually "extraordinarily narrow."  *Antwine v. Prudential Bache Securities, Inc.*, 899 F.2d 410, 413 (5th Cir. 1990).[4]  However, "parties are generally free to structure their arbitration agreements as they see fit."  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52,  57 (1995) (qouting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).  An arbitration agreement may therefore expand judicial review of an arbitration award beyond the scope of the Federal Arbitration Act.  *See Gateway Technologies, Inc. v. MCI Telecomm.*

---

[4]  The Federal Arbitration Act allows a district court to vacate an arbitration award
> (1) Where the award was procured by corruption, fraud, or undue means.
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, . . . or in refusing to hear evidence pertinent to and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  In addition to the statutory list, a district court may vacate an arbitration award when the award reflects an arbitrator's "manifest disregard for the law."  *Williams v. Cigna Financial Advisors, Inc.*, 197 F.3d 752, 761 (5th Cir. 1999).

*Corp.*, 64 F.3d 993, 997 (5th Cir. 1995).

Cook contends that the standard of review in the Employment Problem Resolution Procedures was inconsistent with the arbitration agreement itself. She also argues that the contract is ambiguous, and that the ambiguity should be resolved in her favor.

While the agreement stated that arbitration "may be compelled and enforced under the Federal Arbitration Act," it specifically provided that the arbitration process "shall be conducted in accordance with the [Employment Problem Resolution Procedures]." The procedural rules pertained to the entire arbitration process, which included the review of arbitration awards. A contract provision is ambiguous only where the terms are susceptible to differing reasonable interpretations. *See Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). Having read the arbitration agreement and the Employment Problem Resolution Procedures, we are convinced that the only reasonable interpretation of the agreement is that the incorporated procedural rules governed the entire arbitration process. The standard of review set out in the Employment Problem Resolution Procedures clearly supplemented the provisions of the Federal Arbitration Act and is not inconsistent with the terms of the arbitration agreement.

Appellants also contend that the employment arbitration agreement is distinguishable from the arbitration agreement in

*Gateway*, *supra*, because the parties in *Gateway* were sophisticated commercial entities whereas Gracie Cook was an employee negotiating with a large corporation. Contracts in which one party has minimal bargaining power, also referred to as contracts of adhesion, are not automatically void. *See Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992), *cert. denied*, 506 U.S. 1079 (1993); *In re Oakwood Mobile Homes, Inc.* 987 S.W.2d 571, 574 (Tex. 1999). "Instead, the party seeking to avoid the contract generally must show that it is unconscionable." *Id.* "There is nothing per se unconscionable about arbitration agreements." *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996). "'Unconscionability'" has no precise legal definition." *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 821 (Tex. App.--San Antonio 1996, no writ) (quoting *Southwestern Bell Tel. Co. v.DeLanney*, 809 S.W.2d 493, 498 (Tex. 1991)). The substantive aspect of unconscionability is concerned with the fairness of an agreement and must be settled on a case by case basis. *See id*. Although the supplemental standard of review incorporated into the arbitration agreement benefitted Raytheon in this instance, it was equally available to Mrs. Cook had the award been unfavorable to her. It was not unfair for the arbitration agreement to include a standard of review that allowed the district court to assess the arbitrator's legal and factual conclusions. The district court therefore correctly adopted the standard of review incorporated

9

into the parties' arbitration agreement.

### III. Intentional Infliction of Emotional Distress

In Texas, an employee must prove the following elements to establish intentional infliction of emotional distress:  (1) the employer acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the employer's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe.  *Wal-Mart Stores, Inc. v. Bertrand*, 37 S.W.3d 1, 13 (Tex. App. 2000).  To be extreme and outrageous, "conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id*. (citing *Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex. 1999)).  "Ordinary employment disputes" will not support a claim for intentional infliction of emotional distress.  *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999).  In the employment context, "extreme conduct exists only in the most unusual of circumstances."  *Id*. at 613.  "There is no litmus test for outrageousness; whether conduct was outrageous and extreme must be analyzed on a case-by-case basis."  *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 613 (5th Cir. 1999).

The district court concluded that returning Cook to the "test bed" evaluation after her absence from work did not constitute

10

extreme and outrageous conduct. The court relied primarily on the fact that Cook's physician did not expressly list any restrictions on her work duties. The court also surmised that by instructing Cook to complete the "test bed" evaluation within eight days of her return, Raytheon simply resumed her normal work duties.

In *GTE Southwest, Inc. v. Bruce*, a supervisor continuously subjected the plaintiffs to extremely humiliating and abusive conduct for a period of more than two years. *See Bruce*, 998 S.W.2d at 613-14. The conduct involved profanity, urging employees to quit, approaching employees in a physically hostile manner, and other harassing behavior. *See id*. The Texas Supreme Court concluded that the repeated offensive conduct, evaluated as a whole, "went beyond the boundaries of tolerable workplace conduct." *Id*. at 617.

In *Wal-Mart Stores, Inc. v. Bertrand*, 37 S.W.3d 1 (Tex. App.–Tyler 2000), the Texas Court of Appeals compared the facts before it with those before the Texas Supreme Court in *Bruce*. *See Bertrand*, 37 S.W.3d at 13-15 (citing *Bruce*, 998 S.W.2d at 613-14). The conduct in *Bertrand* was similar, but far less egregious and of much shorter duration. *See Bertrand*, 37 S.W.3d at 14. The court of appeals concluded that the repeated conduct was not outrageous as a matter of law. *See id*. at 14-15.

This case does not involve the same type of repeated abusive

11

behavior.  Cook may have felt ostracized by Braudaway, but Braudaway's conduct leading up to her return from medical leave was no more than a normal employment dispute over an employee's work performance.  Braudaway's decision to resume the evaluation immediately upon Cook's return raises greater concern.  An employer's conduct may be considered extreme and outrageous if the employer knew that the employee was "peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." *Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 532 (Tex. App.--Houston [1st Dist.] 2000) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. f).  Braudaway knew that Cook suffered symptoms of a stroke during the May 1996 meeting.  Based on his knowledge of Cook's peculiar susceptibility to emotional distress, the arbitrator concluded that Braudaway's conduct was intentional, extreme, and outrageous.

Although his conduct was insensitive to Cook's peculiar physical susceptibility to stress, we agree with the district court that it was not extreme and outrageous.

> [T]o properly manage its business, an employer must be able to supervise, review, criticize, demote, transfer, and discipline employees.  Although many of these acts are unpleasant for the employee, an employer must have latitude to exercise these rights in a permissible way, even though emotional distress results.

12

*Bruce*, 998 S.W.2d at 612 (citations omitted).  Cook returned to work with her physician's note, which did not list work restrictions.  Cook claims that she told Braudaway that she was returning to work in order to assess the work she was capable of performing.  It is fundamental to a successful business that an employer have employees that are capable of effectively and efficiently performing their jobs.  To ensure the quality of an employee's work, an employer must be able to evaluate an employee's performance.  *See id*.  Employer's cannot be expected to cater to the peculiar sensitivities of an employee who cannot physically work in a stressful environment.  While Braudaway's conduct was insensitive to Mrs. Cook's condition, his instructions that she resume the evaluation were not extreme and outrageous.  The

district court's judgment vacating the arbitration award is therefore affirmed.


AFFIRMED