**BISON BUILDING MATERIALS, LTD., Appellant,**

v.

**Lloyd K. ALDRIDGE, Appellee.**

Lloyd K. Aldridge, Cross–Appellant,

v.

Bison Building Materials, Ltd., Cross–Appellee.

No. 01–05–00330–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 14, 2006.

Jerald L. Butler and Thomas Christian Van Arsdel, Winstead Sechrest & Minick, P.C., Houston, TX, for Appellant.

Kurt Arbuckle, Emmott & Arbuckle, P.C., Houston, TX, for Appellee.

Panel consists of Justices KEYES, ALCALA, and BLAND.

## OPINION

JANE BLAND, Justice.

Bison Building Materials, Ltd. and Lloyd K. Aldridge appeal an interlocutory trial court order confirming in part and vacating in part an arbitration decision that dismissed Aldridge's claims against Bison. We conclude that we lack statutory authority to consider this interlocutory appeal and therefore dismiss it for want of jurisdiction.

### Background

Aldridge, a truck driver for Bison, sustained an injury in the course and scope of his employment. Aldridge had signed a Mutual Agreement to Arbitrate Claims ("Arbitration Agreement") when his employment began, by which he had agreed to resolve any claims for "work-related illnesses or injuries" via arbitration. After he was injured, Aldridge signed a Post Injury Waiver and Release ("post-injury waiver"). The post-injury waiver states in pertinent part: "I am aware that … I could file a legal action against the Company because of my injury…. In electing to accept benefits under the PLAN, I understand and agree to give up the right to file a legal action against the Company … for any and all damages sustained by me because of my injury." The "PLAN" referenced in the post-injury waiver is Bison's Workplace Injury Plan (the "Plan"), which provides eligible employees who are injured on the job with lost-time income benefits, medical care benefits, and accidental death and dismemberment benefits.

Pursuant to the Plan, Bison paid Aldridge approximately $80,000 in medical and wage replacement benefits. Aldridge subsequently filed a demand for arbitration, asserting a damages claim for lost wages, medical expenses, pain and suffering, mental anguish, and loss of earning capacity. After the parties instituted arbitration proceedings, Bison moved to dismiss Aldridge's claim, raising waiver as a defense, and alternatively pleading an offset for $80,259.

The arbitrator initially denied Bison's motion, finding that a fact issue existed, "albeit very slight[,] as to whether or not [Aldridge] had even signed the Post–Injury Waiver." He ordered Aldridge to provide additional evidence to support his claim. Aldridge responded with an affidavit averring that he did not remember signing the post-injury waiver or, in the alternative, did not understand the consequences of signing it. Observing that "[i]t is well established in Texas that an individual who signs a contract is presumed to have read and understood the contract and comprehended the legal effect of what he has signed in the absence of fraud or deceit[,]" the arbitrator concluded that there was "overwhelming circumstantial evidence indicating Aldridge actually signed the Post–Injury Waiver." Accordingly, the arbitrator determined that Aldridge had waived his right to arbitrate his damages claim against Bison, stating as follows:

[T]he present state of Texas law is such that post-injury waivers as presented in the instant case provide certain and immediate benefits to injured employees. Aldridge was free to decline Bison's benefit plan while still retaining his right to employment as well as any rights to seek damages but declined by signing the Post–Injury Waiver and accepting benefits as provided by the Plan.

For the foregoing reasons, … Aldridge's attempt to arbitrate a claim for common law damages against Bison … is hereby dismissed with prejudice.

In the usual course of events, the arbitrator's determination as to the merits of this dispute, absent certain statutory and

perhaps common law exceptions, would be final and non-reviewable. However, the Arbitration Agreement here provides, somewhat unusually, for trial court review of the arbitrator's decision:

> Either party may bring an action in any court of competent jurisdiction ... to enforce an arbitration award. A party opposing enforcement of an award may bring a separate action in any court of competent jurisdiction to set aside the award, where the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

In accordance with the agreement, Aldridge moved in the trial court to set aside the arbitration award; Bison moved to confirm it. After conducting a hearing, the trial court, applying the standard of review set forth in the Arbitration Agreement, confirmed the arbitration award in part and vacated it in part, concluding that "fact questions" remained on three issues. In relevant part, the trial court's order ("Order") provides as follows:

> [T]he Court determines that the motions should be GRANTED in part and DENIED in part as follows.

> The Court finds that, as a matter of first impression, that both the Texas Supreme Court decision ... *Reyes* ... and the fair notice requirements described therein are properly applied to a post-injury waiver. The Court further finds that the post-injury waiver is ambiguous as to whether the right to arbitration is forfeited. Thus, the Final Award of dismissal is VACATED in PART, solely as to the arbitrator's finding that the post-injury waiver precludes arbitration because there are fact questions on:

(1) Is the post-injury waiver enforceable. That is, (a) does the waiver satisfy the fair notice requirements and, if not, (b) did both parties have actual knowledge of the terms of the waiver agreement. If the answer to these two questions is "no," the waiver is unenforceable. Even if the waiver is enforceable, there is a fact question on:

(2) Do the ambiguous terms of the waiver preclude this action seeking arbitration.

The arbitration award is CONFIRMED as to the finding that Aldridge signed the post-injury waiver.

Both parties appeal from the Order. Bison contends the trial court erred in holding that (1) the Texas Supreme Court's decision in *Storage & Processors, Inc. v. Reyes*[1] applies to post-injury waivers, and that (2) the post-injury waiver Aldridge signed is ambiguous. In his cross-appeal, Aldridge contends there are fact issues regarding whether he signed, or understood that he was signing, the post-injury waiver. After hearing oral argument, we ordered the parties to provide supplemental briefing on the issue of appellate jurisdiction.

## Analysis

As a threshold matter, we determine whether we have jurisdiction over the appeal. *Kilroy v. Kilroy*, 137 S.W.3d 780, 783 (Tex.App.-Houston [1st Dist.] 2004, no pet.). We may not ignore a lack of jurisdiction, even if the parties do not raise the issue. *McCauley v. Consol. Underwriters*, 157 Tex. 475, 478, 304 S.W.2d 265, 266 (1957); *Davis v. Covert*, 983 S.W.2d 301, 302 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.). If we conclude that we do not have jurisdiction, we must dismiss the appeal. *Kilroy*, 137 S.W.3d at 783.

1. 134 S.W.3d 190 (Tex.2004).

Unless specifically authorized by statute, we have jurisdiction to review only final judgments. TEX. CIV. PRAC. & REM. CODE ANN. § 51.012 (Vernon 1997); *Stolhandske v. Stern*, 14 S.W.3d 810, 813 (Tex. App.-Houston [1st Dist.] 2000, pet. denied). A judgment is final for purposes of appeal "if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties." *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 192–93 (Tex.2000); *see also Childers v. Advanced Found. Repair, L.P.*, 193 S.W.3d 897, 898 (Tex.2006) (per curiam) (applying *Lehmann* and holding that trial court's order dismissing parties' claims and compelling arbitration was final because it contained unequivocal finality language). The Order here does not contain finality language or otherwise state that it is a final judgment. Nor does it dispose of all claims and parties. In fact, it does the exact opposite—it states that "fact questions" remain regarding whether the post-injury waiver is enforceable and whether the ambiguous terms of the waiver preclude the arbitration. Thus, the Order does not dispose of all the parties' claims; rather, it "contemplate[s] continuing resolution through the arbitration process" and is "interlocutory per se under the *Lehmann* reasoning." *Brooks v. Pep Boys Auto. Supercenters*, 104 S.W.3d 656, 660 (Tex.App.-Houston [1st Dist.] 2003, no pet.). We therefore must determine whether we are otherwise statutorily authorized to consider this interlocutory appeal.

The Arbitration Agreement provides that it is governed by the Federal Arbitration Act ("FAA"). Under the FAA, a party may appeal an order confirming an award or a partial award, or an order vacating an award. 9 U.S.C. § 16(a)(1)(D),

(E) (1997). "[H]owever, federal procedure does not apply in Texas courts, even when Texas courts apply the Federal [Arbitration] Act." *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992) (holding that, although Texas Arbitration Act allows interlocutory appeal from denial of motion to compel arbitration made under section 171.021 of Act, interlocutory appeal is not available under Texas Arbitration Act when trial court denies motion to compel arbitration made under FAA, even though FAA permits party to take interlocutory appeal); *see also Belmont Constructors, Inc. v. Lyondell Petrochemical Co.*, 896 S.W.2d 352, 355 (Tex.App.-Houston [1st Dist.] 1995, no writ) ("Texas procedure allows appeals of interlocutory orders only if permitted by statute.... An order from the trial court denying arbitration under the Federal [Arbitration] Act does not fall within a statutory exception."). Thus, we examine whether Texas procedure authorizes the parties' interlocutory appeal.

Under Texas procedure, appellate courts possess jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly confers appellate jurisdiction. *Stary v. DeBord*, 967 S.W.2d 352, 352–53 (Tex.1998); *Eichelberger v. Hayton*, 814 S.W.2d 179, 182 (Tex.App.-Houston [1st Dist.] 1991, writ denied). A statute authorizing an appeal from an interlocutory order is in derogation of the general rule that only final judgments are appealable; thus, we strictly construe such a statute. *Walker Sand, Inc. v. Baytown Asphalt Materials, Ltd.*, 95 S.W.3d 511, 514 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

The general Texas statute permitting appeals from interlocutory orders does not include an order confirming in part and vacating in part an arbitration award as one of those interlocutory trial

court orders from which a party may appeal. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(1)-(11) (Vernon Supp.2005) (setting forth eleven types of appealable interlocutory orders). The Texas General Arbitration Act ("TAA"), however, authorizes appeals from certain types of interlocutory orders relating to arbitration proceedings. *See id.* § 171.098 (Vernon 2005); *Stolhandske,* 14 S.W.3d at 813. Specifically, the TAA provides as follows:

> (a) A party may appeal a judgment or decree entered under this chapter or an order:
>
> (1) denying an application to compel arbitration made under Section 171.021;
>
> (2) granting an application to stay arbitration made under Section 171.023;
>
> (3) confirming or denying confirmation of an award;
>
> (4) modifying or correcting an award; or
>
> (5) vacating an award without directing a rehearing.

Tex. Civ. Prac. & Rem.Code Ann. § 171.098(a)(1)-(5). Applying section 171.098(a)(5), the Fort Worth Court of Appeals has held that "a party challenging an order vacating an arbitration award without directing a rehearing in an arbitration governed by the FAA may do so through an interlocutory appeal." *J.D. Edwards World Solutions Co. v. Estes, Inc.,* 91 S.W.3d 836, 839 (Tex.App.-Fort Worth 2002, pet. denied) (cautioning, however, that interlocutory appeal is not permissible under section 171.098(a)(5) if trial court directs rehearing or orders new arbitration).

Here, the trial court's Order confirms an arbitration award in part and vacates it in part. In vacating the award, the Order identifies certain "fact questions" that remain and provides a roadmap for the arbitrator to follow in considering those issues.[2] Though the Order does not expressly direct a rehearing, by identifying remaining issues, it necessarily contemplates resolution of those issues by way of a rehearing.

The fact that these undecided issues are the precise issues the parties ask us to consider on appeal underscores the interlocutory nature of the Order. Moreover, somewhat unusually, the Arbitration Agreement in this case provides that the trial court may review the arbitrator's decision using an appellate court standard of review—a standard that is "the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury." This sort of clause presents interesting issues of jurisdiction and policy, which the parties do not raise or brief here. *See Hughes Training Inc. v. Cook,* 254 F.3d 588, 590, 592–93 (5th Cir.2001) (citing *Gateway Techs., Inc. v. MCI Telecomms. Corp.,* 64 F.3d 993, 996–97 (5th Cir.1995)) (holding identical clause enforceable).[3] But the Arbitration Agreement

---

**2.** Specifically, the Order states that "the Final Award of dismissal is VACATED in PART, solely as to the arbitrator's finding that the post-injury waiver precludes arbitration because there are fact questions . . . ."

**3.** The federal circuit courts of appeal are split on the issue, with the First, Third, and Sixth in accord with the Fifth, and the Eighth, Ninth, and Tenth in disagreement. *Compare Puerto Rico Tel. Co. v. U.S. Phone Mfg. Corp.,* 427 F.3d 21, 31 (1st Cir.2005) ("[T]he parties can by contract displace the FAA standard of review, but that displacement can be achieved only by clear contractual language."), *Jacada (Europe), Ltd. v. Int'l Mktg. Strategies, Inc.,* 401 F.3d 701, 710–11 (6th Cir.2005) (noting that parties may contractually opt out of FAA's standard for vacatur), *and Roadway Package Sys., Inc. v. Kayser,* 257 F.3d 287, 293 (3d Cir.2001) ("[P]arties may opt out of the FAA's off-the-rack vacatur standards and fashion their own . . . ."), *with Kyocera Corp. v. Prudential–Bache Trade Servs., Inc.,* 341 F.3d 987, 994 (9th Cir.2003) (en banc) ("[B]e-

does not provide for *appellate* review of the trial court's decision—in particular, on any interlocutory basis, and thus we need not enter the debate to resolve this appeal, as we decide it based purely on our own statutory-based appellate jurisdiction—or, in this case, lack thereof.

The parties similarly understand the Order to direct a rehearing. In its notice of appeal, Bison states that it appeals from "the Court's order of March 8, 2005, denying in part the Final Award of the arbitrator and *remanding the case . . . for further proceedings.*" (Emphasis added). Likewise, in its initial brief, Bison states that the Order "remanded the case back to arbitration for further proceedings. Specifically, the Court directed the arbitrator to determine whether the post-injury waiver was enforceable under the fair notice doctrine and whether 'the ambiguous terms of the waiver preclude this action seeking arbitration.'" [4] Similarly, in his supplemental brief, Aldridge agrees that "the parties will return to arbitration un-

der the Trial Court's Order, it appears that the Trial Court's Order is considered interlocutory, and the Appeals Court lacks jurisdiction."

■ Applying section 171.098(a)(5), we conclude that the Order "is the functional equivalent of an order granting a new trial [and, as] such[,] . . . is not subject to direct appellate review." *Stolhandske,* 14 S.W.3d at 813–15 (construing section 171.098(a)(5) and concluding that "this Court has no jurisdiction to consider an appeal from an order that vacates an arbitration award and orders a new arbitration"); *accord Prudential Sec., Inc. v. Vondergoltz,* 14 S.W.3d 329, 330–31 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *cf. Citizens Nat'l Bank of Beaumont v. Callaway,* 597 S.W.2d 465, 465–66 (Tex.Civ.App.-Beaumont 1980, writ ref'd) (holding that court lacked jurisdiction under TAA to consider interlocutory appeal from trial court order that compelled arbitration and defined issues for arbitrators to decide).[5]

cause Congress has specified the exclusive standard by which federal courts may review an arbitrator's decision, . . . private parties may not contractually impose their own standard on the courts."), *Bowen v. Amoco Pipeline Co.,* 254 F.3d 925, 937 (10th Cir.2001) ("[P]arties may not contract for expanded judicial review of arbitration awards."), *and UHC Mgmt. Co. v. Computer Scie. Corp.,* 148 F.3d 992, 997–98 (8th Cir.1998) (suggesting in dicta that parties may not contract for expanded judicial review of arbitration award). The Texas Supreme Court has yet to decide this issue. *See Mariner Fin. Group, Inc. v. Bossley,* 79 S.W.3d 30, 43 (Tex.2002) (Owen, J., concurring) ("It is not at all clear whether parties can, by their agreement, expand the standards for judicial review of arbitration awards . . . ."). Our sister court has followed the Fifth Circuit. *See Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.,* 105 S.W.3d 244, 251 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (concluding that, although "parties may agree to expand judicial review of an arbitration award beyond the scope of the FAA," arbitration provision at

issue lacked "clear and express language altering the standard of review").

4. We note that in the supplemental brief it submitted after oral argument, Bison proclaims for the first time that "[t]he parties in this case have been laboring under the mistaken assumption that the trial court's [O]rder . . . directed a rehearing for a resolution of certain fact issues. It does no such thing."

5. Nor is section 171.098(a)(3) applicable. *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.098(a)(3) (Vernon 2005). That provision permits an appeal from an order "confirming or denying confirmation of an award." *Id.* The Order at issue here does not confirm "an award"— rather, it confirms *only part* of an award. As the Order does not confirm the arbitration award in its entirety, the trial court did not issue a corresponding judgment as required by section 171.092(a). *See id.* § 171.092(a) ("On granting an order that confirms . . . an award, the court shall enter a judgment or decree conforming to the order."); *Action Box Co. v. Panel Prints, Inc.,* 130 S.W.3d 249,

██ Strictly construing section 171.098(a), as we must, we hold that the Order at issue here is not an appealable interlocutory order. *Walker Sand,* 95 S.W.3d at 516. "It is fundamental error for an appellate court to assume jurisdiction over an interlocutory order when not expressly authorized to do so by statute." *Gathe v. Cigna Healthplan of Tex., Inc.,* 879 S.W.2d 360, 363 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (citing *New York Underwriters Ins. Co. v. Sanchez,* 799 S.W.2d 677, 679 (Tex.1990)). We do not *imply* a lack of jurisdiction from the TAA provision allowing interlocutory appeals of certain arbitration orders. Rather, absent a final judgment, or statutory authorization, we do not have state court appellate jurisdiction in the first instance. We therefore dismiss the appeal for want of jurisdiction.

## Conclusion

We conclude that we lack statutory authority to consider the parties' interlocutory appeal and therefore dismiss the appeal for want of jurisdiction.

Justice KEYES, dissenting.

EVELYN V. KEYES, Justice, dissenting.

This is a case of first impression for this Court with important jurisdictional implications for Texas arbitration law. Because I believe the majority has incorrectly decided this appeal, I respectfully dissent.

Bison Building Materials, Ltd. and Lloyd K. Aldridge both appeal the trial court's order confirming in part and vacating in part, on legal grounds, an arbitration award subject to the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (2006) (the FAA). The appeal presents threshold questions of subject matter jurisdiction, namely, (1) whether the parties to an arbitration agreement have the power to expand the jurisdiction of a state district court reviewing an arbitration award under the FAA to include a legal review of the arbitrator's decision and, if so, (2) whether the trial court that partially vacates an arbitration award under such expanded jurisdiction retains jurisdiction over future implied arbitral proceedings until it is satisfied that the arbitrator has applied the law correctly.

The majority simply assumes that the trial court has subject matter jurisdiction to vacate an arbitration award under the FAA on the law, rather than on statutorily prescribed grounds, and that it retains jurisdiction over any future arbitral proceedings implied by its legal judgments. Therefore, it concludes that this appeal is interlocutory. Because I strongly disagree that the trial court has the power that the majority ascribes to it, I respectfully dissent. I would determine the scope of the district court's subject matter jurisdiction before attempting to decide whether it *retains* jurisdiction it may never have had. Subject matter jurisdiction—*i.e.,* the court's power to act—takes priority over all other issues and may—indeed must—

251 n. 2 (Tex.App.-Houston [14th Dist.] 2004, no pet.) ("[S]ection 171.092 requires a trial court to enter a corresponding judgment whenever it grants an order confirming ... an award."). Accordingly, we decline to exercise jurisdiction under section 171.098(a)(3). *See Prudential Sec., Inc. v. Vondergoltz,* 14 S.W.3d 329, 330–31 (Tex. App.-Houston [14th Dist.] 2000, no pet.)

(where court order vacated arbitration award and directed rehearing, holding that there was no statutory basis for appeal under section 171.098(a)(5), and rejecting appellant's assertion that interlocutory appeal was nonetheless authorized under section 171.098(a)(3) because order also contained language expressly denying confirmation of award).

be raised at any stage of the proceedings when it appears doubtful.[1]

This is a dispute over an employee's right to sue his employer for personal injuries after the employee has signed a post-injury waiver of the right to sue. The arbitrator dismissed Aldridge's claims against Bison after finding that Aldridge had signed such a waiver. The trial court reviewed the arbitrator's award on legal grounds and entered a final "Order" confirming the arbitration award in part and vacating it in part on the ground that the arbitrator had misconstrued Texas law. The court held, "as a matter of first impression, that both the Texas Supreme Court decision *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190 (Tex.2004) ... and the fair notice requirements described therein are properly applied to a post-injury waiver." Applying *Reyes*, the court confirmed the arbitration award "as to the finding that Aldridge signed the post-injury waiver" and vacated the award "solely as to the arbitrator's finding that the post-injury waiver precludes arbitration because there are fact issues," *i.e.*, namely (1) whether the post-injury waiver is enforceable and (2) whether "the ambiguous terms of the waiver preclude this action seeking arbitration." Bison appeals the trial court's legal conclusions. In a cross-appeal, Aldridge contends there are fact issues regarding whether he signed, or understood that he was signing, the post-injury waiver.[2]

Ordinarily, a district court may vacate an award under the FAA only if (1) the award was procured by fraud, corruption, or undue means; (2) there was evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct that prejudiced the rights of a party; (4) the arbitrators exceeded their powers; or (5) in making the award, the arbitrators acted with manifest disregard for the law. 9 U.S.C. § 10(a); *Harris v. Parker College of Chiropractic*, 286 F.3d 790, 792 (5th Cir.2002); *Denver & Rio Grande W. R.R. v. Union Pac. R.R.*, 119 F.3d 847, 849 (10th Cir.1997) (court may vacate arbitration award only for reasons enumerated in FAA, 9 U.S.C. § 10, or for handful of judicially created reasons). The court of appeal reviews de novo a trial court's decision to confirm or vacate an arbitration award under the FAA. *See Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld*, 105 S.W.3d 244, 250 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *Gateway Techs., Inc. v. MCI Telecomms. Corp.*, 64 F.3d 993, 996 (5th Cir.1995). This review, likewise, is usually "extraordinarily narrow" because of the narrow grounds on which an arbitration award may be vacated under the FAA. *Tanox*, 105 S.W.3d at 250 (quoting *Hughes Training, Inc. v. Cook*, 254 F.3d 588, 593 (5th Cir.2001)).

In this case, however, in addition to providing that any disputes between the

---

1. *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex.1991) (holding that lack of subject-matter jurisdiction is fundamental error that may be raised for first time at appellate level).

2. Despite the trial court's characterization of the issues on which it ordered a new arbitration as "fact issues," issues of whether a post-injury waiver is enforceable and whether the terms of a waiver are ambiguous are both questions of law. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003) ("Deciding whether a contract is ambiguous is a question of law for the court."); *Silsbee Hosp., Inc. v. George*, 163 S.W.3d 284, 289–90 (Tex.App.-Beaumont 2005, pet. denied) (construing waiver agreement signed by employee and holding, "When the fair notice requirements apply, a contract must satisfy both requirements [i.e., the express negligence doctrine and conspicuousness] to avoid being *unenforceable as a matter of law*") (emphasis added).

parties were to be decided under the FAA, the parties' arbitration agreement (the "Agreement") stated:

> Either party may bring an action in any court of competent jurisdiction ... to enforce an arbitration award. A party opposing enforcement of an award may bring a separate action in any court of competent jurisdiction to set aside the award, where *the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.*

(Emphasis added).

Both the United States Court of Appeals for the Fifth Circuit and our sister state Court of Appeals for the Fourteenth District have held that parties may contractually modify the standard of review of an arbitration award made under the FAA. *Harris*, 286 F.3d at 793; *Gateway*, 64 F.3d at 996; *Tanox*, 105 S.W.3d at 251.[3] When parties agree contractually to subject an arbitration award under the FAA to expanded judicial review, "federal arbitration policy demands that the court conduct its review according to the terms of the arbitration contract." *Gateway*, 64 F.3d at 997; *see also Volt Info. Sci. Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 469, 109 S.Ct. 1248, 1250, 103 L.Ed.2d 488 (1989). However, the court must first determine whether the arbitration agreement does, in fact, expand the jurisdiction of the trial courts to review the award. If the agreement does not contain "clear and express language alter-

ing the standard of review," the FAA's default standard of review of arbitration awards applies. *Tanox*, 105 S.W.3d at 251–52.

In *Tanox*, the Texas Court of Appeals, like the federal Fifth Circuit Court of Appeals, held that parties have the power to expand the jurisdiction of the trial court reviewing an arbitration award. *Id.* at 251–52. However, in *Tanox*, the parties' agreement to submit their disputes to arbitration "under the rules of American Arbitration Association then in place and applicable legal and equitable principles" and their choice of law provision stating that the "agreement shall be construed in accordance with the laws of the State of Texas" lacked the clear and express language necessary to express the intent to alter the standard of review. *Id.* Therefore, the default FAA standard applied. *Id.* at 252.

The *Tanox* court distinguished *Gateway* and *Hughes*, two of the Fifth Circuit cases cited above, in which the court did find that express language in the parties' arbitration agreement altered the standard of review of the arbitration award. *See Tanox*, 105 S.W.3d at 251; *Hughes*, 254 F.3d at 590 (construing agreement that "in actions seeking to vacate an award, the standard of review to be applied to the arbitrator's findings of fact and conclusions of law will be *the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury*' ") (emphasis added); *Gateway*, 64 F.3d at 996

---

**3.** As the majority states in an extensive footnote, "The federal circuit courts of appeal are split on the issue, with the First, Third, and Sixth in accord with the Fifth, and the Eighth, Ninth, and Tenth in disagreement." However, while the majority states that "[t]his sort of clause presents interesting issues of jurisdiction and policy," it declines to address them in the body of its opinion because "the parties do not raise or brief [them] here."

This is incorrect. Bison cites both the Agreement and *Tanox* in its appellate brief as providing the standard of review of the trial court's setting aside of the award. Moreover, as stated above, whether parties have the power to expand district court subject matter jurisdiction over motions to enforce or deny arbitration awards is a threshold jurisdictional issue that may always be addressed, regardless of whether it is raised by the parties.

(construing agreement that "[t]he arbitration decision shall be final and binding on both parties, except that *errors of law shall be subject to appeal*") (emphasis in original); *see also Harris,* 286 F.3d at 793 (construing agreement that "[t]he Award of the Arbitrator shall be binding on the parties hereto, although *each party shall retain his right to appeal any questions of law, and judgment may be entered thereon in any court having jurisdiction.*") (emphasis added).

Here, the language in the parties arbitration agreement is virtually identical to that at issue in *Hughes,* specifically, "the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury." *Cf. Hughes,* 254 F.3d at 590. Therefore, I would hold that the parties did clearly express their intent to expand the jurisdiction of the trial court by their arbitration agreement and that they had the power to do so under the foregoing authority. I would also hold that, under the plain language of the Agreement, the parties conferred on the trial court the same jurisdiction this Court has when reviewing a decision of a trial court sitting without a jury—namely the jurisdiction to review findings of fact and conclusions of law, to reverse decisions on factual sufficiency grounds when there is no evidence to support them or they are contrary to the great weight and preponderance of the evidence, and to decide questions of law de novo.

I see nothing in the language of the parties' Agreement, however, that expresses the intent to confer on the trial court *not only* the foregoing power to review the arbitration award under the appellate standard of review applied to a trial court's decision in a bench trial, *but also* the jurisdiction to order a new arbitration under the law as the district court interprets it

and to retain jurisdiction with no right of appeal until the trial court has satisfied itself that the retrial is legally correct. Moreover, the parties themselves clearly understood the scope of review they had conferred on the trial court to be limited to a legal review subject to appeal, as evidenced by their appeal and cross-appeal from the trial court's final "Order" filed in this Court. Nor is there is anything that indicates, or even suggests, that in entering its final order the trial court attempted to direct a rehearing under its conception of the law while retaining jurisdiction over the proceedings or that, had it done so, it would have been acting within power conferred on it either by the FAA or by the parties' arbitration Agreement. Thus, I cannot agree that the majority's understanding of the nature of the trial court's Order and its effect is correct. Rather, it is clear that the trial court and the parties both thought that the "Order" was a final judgment expressing the court's opinion on the law that was subject to appellate review. And, indeed, this is the only reasonable interpretation of the Order and its effect, since the alternative is the waste of litigants' and court resources on potentially fruitless arbitrations until much-delayed appellate review finally determines what the applicable law is.

The majority relies on authority from this Court, *Stolhandske v. Stern,* 14 S.W.3d 810 (Tex.App.-Houston [1st Dist.] 2000, pet. denied), as support for its conclusion that the trial court retains jurisdiction over future arbitrations until the arbitrator enters an award the trial court believes to be legally correct and that, therefore, the trial court's order vacating the arbitration award in part was interlocutory. 14 S.W.3d at 813. *Stolhandske* construed a provision in the Texas Arbitration Act which states that a party *may* appeal a trial court's order "vacating an award without directing a rehearing,"

which is literally what happened here. *Id.* (quoting TEX. CIV. PRAC. & REM.CODE ANN. § 171.0098(a) (Vernon Supp.1999)). Therefore, had the majority followed the plain language of section 171.0098(a) and *Stolhandske*, it would have had to conclude that the trial court's order was appealable, not interlocutory. The majority infers from *Stolhandske*, however, that a party may *not* appeal a trial court's order that vacates an arbitration award subject to the FAA when the trial court's order *implies*, without directing, a future arbitration to be conducted under a different interpretation of the law. I do not interpret *Stolhandske* as applying to the situation here, where the trial court did not direct a rehearing and where, had it done so, it would have been acting beyond its authority under both the FAA and the parties' arbitration Agreement.

Bison and Aldridge have properly appealed the trial court's legal conclusions. I would hold that we are obligated to review those conclusions de novo. *See Tanox*, 105 S.W.3d at 250.

For the foregoing reasons, I would address the merits of this appeal.